*In re* ESTATE OF CAROLINE J. LETCHES, Deceased.—(MAE D. SHARPE, a/k/a Mamie Kananen, Petitioner-Appellee, *v.* PETER G. PORIKOS, Ex'r of the Estate of Caroline J. Letches, *et al.*, Respondents—(SAMUEL J. BETAR, Public Administrator, *et al.*, Respondents-Appellants).)

First District (2nd Division)   No. 79-227

Opinion filed December 26, 1979.

John L. Kienlen, of Chicago, for appellant Samuel J. Betar.

Henry T. Synek, of Chicago, for other appellants.

Richard Altieri, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Respondents, the administrator of the estate of Caroline Letches and the legatees under the purported will of Caroline Letches, appeal from an order of the circuit court of Cook County setting aside the will and ordering that the probate thereof be null and void. The issues presented for review are (1) whether the trial court abused its discretion in proceeding without the presence of the administrator or his attorney and then denying the administrator's request to reopen the proceeding to present his case, and (2) whether the trial court's finding that decedent was under an insane delusion at the time she executed the will was contrary to the manifest weight of the evidence.

We reverse and remand.

On December 25, 1976, Caroline J. Letches (hereinafter decedent) died leaving an instrument that purported to be her last will and testament. The instrument, dated October 31, 1975, provided for decedent's funeral arrangements and for the payment of all inheritance and estate taxes and of the expenses of the funeral and of the estate administration. Article III of the instrument provided:

> "Although I have had the fortune of having been happily married for most of my adult life, I have not been blessed with children of my own, either natural or adopted, accordingly, I wish to make further provision for those whom I have looked upon as if they were family to me and who have meant so much to me with respect to my comfort and consolation during my later years."

The instrument then provided for specific monetary distributions to named legatees, including nieces, nephews and charitable organizations, and gave the residuary estate to James A. Letsos and Marie A. Letsos. Peter G. Porikos, decedent's attorney and scrivener of the will, was named as executor and granted specific powers to deal with the decedent's property.

A hearing to prove heirship was held on January 31, 1977. Mr. Porikos filed an affidavit that all decedent's relatives were out of State and that he had known decedent for 20 years and had been decedent's attorney for the last five years. Porikos testified that decedent was 89 years old at the time she died and that decedent had been married three times. Decedent's first husband was Sakis Kananen, who predeceased decedent; there was one child, Mamie, born of the marriage, and it was not known whether the child was living; the first marriage ended in divorce. Decedent's second husband was Paul Larsen, who was deceased, and there was one child of the marriage who died at birth. Decedent's third husband was Charles Letches, who was deceased, and there were no children of the marriage. On February 7, 1977, the court entered an order declaring Mamie Kananen as decedent's only heir at law and next of kin. After a hearing on April 28, 1977, in which Mamie Sharpe testified, the court amended the order to declare Mamie Kananen Sharpe, wife of Ernest Sharpe, as decedent's only heir at law and next of kin.

On July 8, 1977, petitioner Mae D. Sharpe, formerly Mamie Kananen, filed a petition to set aside the will. Petitioner alleged that on March 6, 1977,[1] an instrument purporting to be decedent's last will and testament was admitted to probate and Samuel Betar, public administrator, was appointed to act as administrator with will annexed because Mr. Porikos failed to qualify as executor. Petitioner alleged in count I that decedent at the time of execution of the will was not of sound mind, that decedent did not know the objects of her bounty and had she known she had a daughter she would have bequeathed her estate to petitioner. Further, petitioner alleged that decedent was acting under undue influence and domination of one or more respondents and was induced to leave her estate to them, and that decedent was suffering from cancer and resorted to excess in alcohol which affected her mind. Count II alleged that decedent at the time of execution of the will was under influence of her attorney, Mr. Porikos. The petition named the administrator, Mr. Porikos, and all the named legatees under the will as respondents.

Trial began on May 17, 1978, and petitioner presented the testimony of Lillian Merrelli, a niece of decedent, and Lonnie Merrelli, Lillian's husband. Both witnesses testified, subject to an objection by respondents,

---

[1] The petition recites March 6, 1976. However, this must be a typographical error since decedent did not die until December 25, 1976.

that under the Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2) neither witness could testify as to conversations with decedent because Lillian Merrelli was a legatee under the will in question and under a prior will executed by decedent.[2] After both witnesses had testified, the trial court granted respondents' motion to strike as to all testimony of the witnesses except that which supported the fact that petitioner was the decedent's natural daughter. Lillian Merrelli had testified that decedent had one daughter, Mamie, by her first marriage, that the marriage ended in divorce which was granted to decedent's husband on the grounds of adultery and that custody of the daughter was awarded to the husband. Mrs. Merrelli also testified on cross-examination that decedent knew she had a daughter and that she discussed the daughter with the witness during the witness' visits with decedent.

Petitioner, Mae D. Sharpe, testified that her maiden name was Mamie Kananen. It was then stipulated by all the parties that petitioner was the daughter of decedent. Petitioner testified further that after her parents were divorced, she lived with her paternal grandparents until they died and then she lived with her mother's sister. When petitioner was eight or nine years old, her mother came to visit her at her grandparents' home, and when petitioner was 14 years old she visited her mother in Milwaukee. Petitioner saw her mother in April 1936 when decedent's second husband died, and in June 1936 she took decedent to Detroit, and in July 1936 she took decedent to Washington. In 1945 petitioner moved to California, and in 1947 she saw decedent twice. In November 1971 petitioner visited decedent in Chicago, and between 1947 and 1971 she called her mother. It was then stipulated that petitioner would testify that from 1971 to the day decedent died, petitioner contacted decedent by telephone calls and cards, and she treated decedent with kindness, love and respect. On cross-examination petitioner testified that decedent knew petitioner was her daughter but she "passed her off as her niece."

Petitioner offered into evidence a copy of the inventory of the estate which showed the value of the estate to be $49,915. Petitioner then rested and respondents made a motion for directed verdict, alleging that petitioner failed to make a prima facie case. The court continued the cause until the next day to consider the motion. On May 18, 1978, after hearing arguments, the trial court granted respondent's motion for directed verdict as to count II of the petition (alleging undue influence of Porikos) and denied the motion as to count I. The court found that petitioner had presented a prima facie case as to the insane delusion allegation. Respondents made a motion to strike certain paragraphs of count I, stating that petitioner had presented no evidence that decedent

---

[2] The prior will is not included in the record on appeal, and the record does not disclose the contents of the prior will.

was dominated by respondents or was suffering from dotage, cancer or was affected by alcohol. The court granted the motion to strike paragraphs 5, 8, 9 and 10 and found that the only issue was paragraph 6 which alleged that decedent did not know the objects of her bounty. The court then continued the cause for respondents to address count I.

On July 10, 1978, trial continued; however, neither the administrator nor his attorney, Mr. Kienlen, was present. The court stated that since Mr. Synek, the attorney for certain named legatees, was present and represented the same interests as those of the administrator, trial would proceed.[3] Respondents offered into evidence a copy of the divorce decree entered in 1915 by the circuit court of Houghton County, Michigan, which granted a divorce to decedent's first husband, Zachary Kananen.[4] Respondents then rested their case and made a motion to dismiss the petition for failure of petitioner to sustain her burden of proof. The court reserved ruling to permit Mr. Synek an opportunity to present a transcript of the proceedings of May 17, 1978, so that the court would consider only those facts in evidence and not the testimony previously stricken by the court.

Further proceedings were held on August 3, 1978. At that time Mr. Kienlen was present and he requested the court to reconsider his motion for a directed verdict made at the close of petitioner's case. The court allowed Mr. Kienlen to present his argument and then denied the motion. Kienlen then requested an opportunity to present his defense, and the court denied the request, stating that both sides had rested and the court was to make its ruling at that time. The court then found that decedent was acting under an insane delusion at the time she executed the will, and the court declared the will to be invalid and the probate thereof to be null and void. A post-trial motion filed by respondents was denied.

Respondents contend that the trial court denied the administrator a fair trial because the court proceeded with trial without the presence of the administrator or his attorney, Mr. Kienlen. The record indicates that on July 10, 1978, Mr. Kienlen was not present and that after Mr. Synek, counsel for several other respondents, attempted unsuccessfully to contact Mr. Kienlen, the trial court stated it would proceed. The court noted that the interests of all respondents were the same and that respondents' position was ably defended by Mr. Synek. When the parties next appeared before the court on August 3, 1978, Mr. Kienlen was present, and he stated that he had not been aware of the hearing on July 10, 1978, and was in his office that day but was not called. When Mr. Kienlen requested the court to reconsider his motion for directed verdict,

---

[3] The record shows that the court granted a short recess so that Mr. Synek could call Mr. Kienlen's office. When court reconvened, Mr. Synek stated that Mr. Kienlen was not in his office and could not be reached.

[4] This exhibit is not included in the record on appeal.

the court allowed Mr. Kienlen to argue and allowed petitioner's counsel to respond, but then denied the motion. Kienlen then stated that he wanted to put on his defense. The court denied his request. Kienlen did not make an offer of proof or state to the court that he had witnesses to present. However, in arguing the post-trial motion, Mr. Synek stated that Mr. Kienlen had three witnesses to present, one of whom was Mr. Porikos, decedent's attorney and scrivener of the will.

■■ It is well established that a party to an action has the right to be present at trial. (See *Village of Elmwood Park v. Keegan* (1975), 26 Ill. App. 3d 925, 927, 326 N.E.2d 92.) However, it is also true that where a party, through its own inadvertence, does not appear on the day set for trial, it is not error for the court to proceed with trial on the merits. (See *Williams v. Pearson* (1961), 23 Ill. 2d 357, 177 N.E.2d 856.)[5] Further, it is established that once a case has been closed, the decision as to whether a party may reopen the proceeding to introduce further testimony is within the sound discretion of the trial court. (*Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 682, 325 N.E.2d 328.) A reviewing court will not disturb the trial court's decision unless it appears that there was an abuse of discretion and the failure to reopen proofs resulted in substantial injustice. (*Heller*, at 682-83.) In *Heller* the court stated that while the trial court's discretion should be exercised liberally where the evidence was not accessible or was inadvertently overlooked, if the proof offered is of such a character that it could have been produced at an earlier time, a court will not be deemed to have abused its discretion in denying a motion to reopen the proofs. Thus, the court may consider the diligence exercised by the party offering the evidence. Where the evidence offered would not materially alter the outcome of the case, it is not error for the trial court to refuse to allow it.

■ In the case at bar, Kienlen did not have an opportunity to present any evidence. Although this was due to his own inadvertence by failing to appear on July 10, 1978, Kienlen's request to present a defense was made before the court made its findings of fact and entered its judgment for petitioner. Thus, the case at bar is unlike *Heller* in which the motion to reopen was made after judgment was entered. Respondents in the case at bar were diligent in making their request to reopen the proceedings, and it does not appear that the parties or the court would have been considerably delayed or inconvenienced had the court allowed Kienlen's request. Also, it appears that the trial court believed that further evidence

---

[5] The court in *Williams* held that when plaintiffs failed to appear for trial, the court was not compelled to dismiss the cause for want of prosecution but could proceed to hear defendants' evidence and enter a directed verdict for defendants. In *Williams* plaintiffs did not appear before the trial court within 30 days and request the court to vacate its judgment; rather, after four months plaintiffs filed a petition under section 72 requesting that the judgment be set aside.

would have affected the outcome of the case. The court, in discussing the evidence and arguments before making its decision, noted that testimony from Mr. Porikos would have been significant and may have shown that the language in clause 6 of the will was merely "precatory." Therefore, we conclude that the trial court erred in refusing to reopen the proceedings and to allow Mr. Kienlen an opportunity to present the administrator's defense.

Based on the foregoing we need not decide whether the trial court's finding that decedent was under an insane delusion at the time she executed the will was contrary to the manifest weight of the evidence. Therefore, we reverse the order of the circuit court of Cook County, and we remand the cause for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STAMOS, P. J., and HARTMAN, J., concur.