Nancy Lee LOWREY,
Petitioner-Respondent,

v.

Randell Dee LOWREY,
Respondent-Appellant.

No. WD 32645.

Missouri Court of Appeals,
Western District.

March 16, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied
June 14, 1982.

Michael Paul Harris (argued), St. Joseph, for respondent-appellant.

David P. Macoubrie (argued), Cleaveland, Macoubrie, Lewis & Cox, Chillicothe, for petitioner-respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Randell Dee Lowrey appeals from that portion of the judgment of dissolution of marriage which awards Nancy Lee Lowrey maintenance in the sum of $550 per month for a period of five years. We affirm.

The parties were married in June, 1976 and separated in October, 1980. During the marriage Dr. Lowrey attended dental school graduating in May, 1980 and opening an office in Chillicothe, Missouri in August, 1980. Mrs. Lowrey worked as a registered nurse using her earnings, a total of over $58,000 during the four years, to support the marriage. Dr. Lowrey's parents paid his dental school tuition and expenses which were in excess of $10,000 and over $3,000 for other expenses. Dr. Lowrey's own earnings during the marriage were minimal. No children were born of the marriage.

At the trial Mrs. Lowrey attributed the failure of the marriage to Dr. Lowrey's relationship with another woman. She admitted striking Dr. Lowrey on several occasions. She testified that she was twenty-seven years old, in excellent health, and currently reemployed as a registered nurse in Kansas City after having left her job to live and work in Chillicothe for a few months before the separation. Her net monthly income is $947, and she itemized monthly expenses of $1,510. She expected future salary increases at regular intervals and would soon be able to take advantage of health and life insurance programs at her own expense through her employment.

Dr. Lowrey, age twenty-six and in excellent health, stated that Mrs. Lowrey basically supported him during dental school. Although he admitted that his relationship with another woman contributed to the failure of the marriage, he complained of Mrs. Lowrey's "extreme" temper, her dislike for his friends, and friction between Mrs. Lowrey and his parents. He testified to a gross monthly income of approximately $3,500 from his practice and claimed monthly office expenses of $2,638 and monthly personal expenses of $1,538. Dr. Lowrey, who was living with his parents at the time of trial, admitted, however, that his itemized personal expenses were all either guesses or expenses copied from Mrs. Lowrey's statement.

After setting aside to respondent as non-marital property one quarter horse, the trial court divided the marital assets and liabilities. Mrs. Lowrey received household goods and appliances valued at $1500, a 1976 automobile valued at $2300, a checking account containing less than $200, and a life insurance policy with no cash value. Dr. Lowrey was awarded a 1979 automobile valued at $5500, checking and savings accounts totalling $2055, two life insurance policies with no value, and his office equipment, supplies and fixtures valued at $51,000. Dr. Lowrey's dental equipment and fixtures were fully encumbered. Therefore, the court held that he was solely responsible for satisfying that amount and for bank loans totalling $14,000 which included loans for both vehicles. In addition, the trial court ordered Dr. Lowrey to pay Mrs. Lowrey's attorneys' fees of $1200, and further ordered that he pay Mrs. Lowrey maintenance in the sum of $550 per month for a period of five years. The trial judge made the following comments regarding the order of maintenance:

[B]oth of the parties are in good health and possess the attributes necessary to provide for at least subsistance [sic] and then some, although the characterization of the professional status attained by the Respondent as an asset is somewhat elusive and less than clear either in cases or in the eye of the Court. It is a factor, and the contribution of the Plaintiff toward the Respondent in attaining his degree in denistry [sic] and thereby attaining a position of earning power far exceeding that of the Petitioner should and is in this case taken into consideration.

The Court recognizes the relative positions of the parties as to their future needs and expectations. The Plaintiff's capacity for future earning is controlled by a market which has always been limited, whereas the Respondent's capacity for future earnings is limited only by his industry.

The separation in this case occurred at a time when the earning capacity of the Respondent had not been realized to the extent of adding or accumulating assets of great value; however, there is nothing in the evidence or from reasonable inferences derived from the evidence to lead the Court to believe that the earning capacity of the Respondent is in any way adversely affected.

. . . .

I do find with regard to the relative position of the parties that the Plaintiff Petitioner is entitled to maintenance, but that entitlement in some respects is tied to I suppose a theory of recoupment concerning the investment that she made from her earnings towards the Respondent, being put in a position to obtain a professional position, and I further find that her entitlement to maintenance is limited to a period of time to put her in a relative whole or even position with regard to the energies and assets she contributed to the marriage relationship and the Respondent during the period of time he was in school.

. . . Court finds that a reasonable amount of support would be in the amount of $550.00 per month for a period of five years and to terminate at the end of five years.

On appeal Dr. Lowrey contends that the trial court's award of maintenance was an abuse of discretion, was unsupported by the facts and was an erroneous application of § 452.335, R.S.Mo.1978 [1].

1. Section 452.335 (as effective January 1, 1974) reads as follows in relevant part:

1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for the reasonable needs; and

(2) Is unable to support himself through appropriate employment, . . .

2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

This court's review of the maintenance award is, of course, governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976) (en banc), so that the decree of the trial court will not be disturbed unless there is no substantial evidence to support it or unless it erroneously declares or applies the law. The determination of the trial court with respect to the allowance and amount of spousal maintenance is discretionary, and appellate review is only to determine if the court has abused such discretion. *Pederson v. Pederson*, 599 S.W.2d 51, 53 (Mo.App. 1980).

In *Horridge v. Horridge*, 618 S.W.2d 202 (Mo.App.1981), this court held that, "Section 452.335 governs an award of maintenance. The statute allows a great deal of discretion to the trial court.... The court, nevertheless, must know whether the childless spouse seeking maintenance lacks sufficient property to meet her reasonable needs and is unable to support herself through appropriate employment." Dr. Lowrey contends that Mrs. Lowrey's "circumstances fit neither of these two prerequisites" in that she left the marriage gainfully employed, free of debt, and in possession of household goods and furniture valued at $1,500, a 1976 automobile valued at $2,300 and a checking account of $183.37.

■ The trial judge obviously felt that Mrs. Lowrey should be reimbursed for her substantial contribution to Dr. Lowrey's professional career. Knowing that he had only two possible ways to do so, namely, property division or maintenance, he stated his uncertainty as to whether that profession could be labeled an asset[2] of the marriage so as to be property to be divided. Although it did not clearly hold that a professional degree is a marital asset, in *In Re Marriage of Vanet*, 544 S.W.2d 236, 241 (Mo.App.1976), this court observed that the wife's financial contribution toward the husband's legal education could be a relevant factor in a "just" division of property. The court at 241 said:

> The financial contribution made by the wife towards the husband's legal education was of inestimable value with respect to acquisition of the marital property.... The "economic circumstances" of the wife at the time the marital property was divided were far less desirable than were those of the husband since he possessed the earning power of a lawyer while she possessed only the earning power of a secretary of limited skill.

The court concluded that such facts "when coupled with the desirability of awarding the family home to the wife, since she was awarded custody of the three minor children, completely vitiate the husband's contention that the division of marital property was 'inequitable' and violative of the guidelines laid down by Section 452.330, supra." *Id.*

Despite the trial judge's ruminations about treating Dr. Lowrey's newly acquired professional status as an asset of the marriage, we need not address that issue in this case because the court's decision to award maintenance to Mrs. Lowrey was finally based upon her need to close the gap be-

---

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ...;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage.

**2.** Other jurisdictions have wrestled with the professional school—working spouse syndrome and the problem of applying property status to educational degrees. *See Lynn v. Lynn*, 7 FLR 3001 (decided 12–5–80), where the court in an assessment of the problem and possible solution noted that at that time five states absolutely excluded the educational degree or license from equitable distribution or community property and that five states included the degree or license with severe modification.

tween her income and her monthly expenses. The only question presented, therefore, is the sufficiency of the evidence to support the trial court's award.

"The fact of an order for maintenance having been made ... presupposes that the trial court found the wife's reasonable needs to require supplement above the sums derived from marital property apportioned and income from possible employment." *Hull v. Hull,* 591 S.W.2d 376, 382 (Mo.App. 1979). Moreover, sufficient evidence was presented in the instant case to conclude that Mrs. Lowrey's reasonable needs exceeded her income. The household goods, automobile and small bank account apportioned to her obviously are not income-producing property which would aid in meeting her needs.

Once the trial judge found the requirements of § 452.335.1 to be satisfied, he could consider the factors of § 452.335.2 and other relevant factors including contributions toward the development of the spouse's special earning capacity in determining the amount of the maintenance to be awarded. *Id.; Pederson v. Pederson, supra.* The trial judge did not abuse his discretion.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.