*In re* MARRIAGE OF JAMES N. WEINSTEIN, Plaintiff-Appellee, and FRANCES S. WEINSTEIN, Defendant-Appellant.

First District (4th Division)   No. 83—1763

Opinion filed October 18, 1984.

Richard L. Hoffman, of Chicago, for appellant.

Edward R. Nathanson, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Frances S. Weinstein (Frances) appeals from the judgment of the Cook County circuit court which dissolved her marriage to James N. Weinstein (James) and distributed the couple's marital property and from the court's denial of her post-judgment motions to reopen proofs. She raises three issues for our review:

1. Whether the trial court erred in excluding expert testimony of the value of James' osteopathy degree and his license to practice surgery, offered by Frances on the grounds, *inter alia*, that she had a

property interest therein;

2. Whether the trial court committed reversible error in finding that Frances' jewelry was marital property;

3. Whether the trial court committed reversible error in denying Frances' motion to reopen proofs to show that she had lost her job, that James was about to enter the job market as a surgeon, and that he had breached an out-of-court agreement to obtain a Jewish divorce.

We find Frances' arguments on each issue unpersuasive, and affirm the trial court's judgment and order.

James and Frances were married on July 15, 1973, and separated on November 12, 1981. There were no children as a result of the marriage. James filed his petition for dissolution of marriage on December 10, 1981, and Frances her counterpetition for dissolution on December 9, 1982. The trial court granted Frances' petition and distributed the couple's marital assets on May 16, 1983. Testimony and evidence produced at the hearings before the court revealed the following pertinent facts.

At the time of their marriage James was 23 years old and Frances was 21. James had completed one year of study toward a master's degree in anatomy; Frances had received a bachelor's degree and had begun a career in retailing. During their marriage, James continued his studies while Frances held retail positions at Albert K, a women's clothing store chain. Essentially, James' parents paid for his tuition and related educational expenses, and Frances' salary was used for the couple's common living expenses. The record indicates that James pursued his academic endeavors full-time from 1973 to 1977. He graduated from Chicago College of Osteopathic Medicine in June 1977 and interned for a year at Chicago Osteopathic Hospital. He then received his Doctor of Osteopathy license and began a residency in orthopedic surgery at Rush-Presbyterian-St. Luke's Medical Center, earning a yearly salary of approximately $22,000. At the time of the court's hearings, he was to complete this residency in July 1983 and had applied for a grant to the National Institute of Health for a three-year fellowship at a maximum salary of $17,000 per year. No final determination of this application had been made at the time the court dissolved the couple's marriage and distributed the marital estate.

During the period James attended medical school, Frances held retailing positions at Albert K. Her employment record reflected consistent raises in her salary over the previous years, and in the last four to five years prior to the dissolution hearings, Frances had been given increasing responsibilities, culminating in a promotion into the management level of the company. Her gross earnings from this re-

tailing management position were almost $22,000 in 1981 and almost $26,000 in 1982. She stated at the hearing, however, that the advancement potential of the position she held was uncertain because the company had encountered financial difficulties in recent months which had caused it to lay off employees with many more years of experience with the company than she had.

Overall, evidence presented to the trial court indicated that for the years from 1973 to 1977, Frances' earnings totalled approximately $50,000 while James' amounted to roughly $9,000, a good portion of which was earned in the last months of 1977 when James began his internship. From 1977 to the date of the dissolution hearing their earnings were roughly equivalent, with Frances earning slightly more than James.

The trial court found that during the marriage James and Frances were able to accumulate a marital estate valued at almost $120,000. At the time of the hearing the estate consisted of the following:

1. a condominium unit at 1660 North LaSalle Street with a fair market value of $90,000, a mortgage balance of $48,000, and a net equity of $42,000, which they owned as joint tenants;

2. a condominium unit at 1460 North Sandburg Terrace with a fair market value of $86,000, a mortgage balance of $66,524, and a net equity of $19,476; they owned this unit jointly with Frances' parents, and thus had an interest in one half of the net equity, or $9,738;

3. a condominium unit at 5415 North Sheridan Road with a fair market value of $55,500, a mortgage balance of $34,021, and a net equity of $21,479; they owned this unit jointly with Frances' parents, and thus had an interest in one half of the net equity, or $10,740;

4. a Dreyfus money market fund, valued at $34,053 at the time of the couple's separation, of which Frances had spent $7,053 subsequent thereto, for a present value of $27,000;

5. a pension plan owned by Frances with her present employer, with no preset value;

6. Commonwealth Edison stock valued at $2,500;

7. Kansas City Power & Light common stock, valued at $2,800;

8. The Inland Limited Partnership, a tax shelter, valued at $4,000;

9. a life insurance policy covering James, valued at $6,439;

10. a 1968 Chevrolet automobile, valued at $2,800;

11. items of women's jewelry, worn by Frances, valued at $4,300.

The trial court determined that James' medical degree and license were not marital property subject to distribution.

To Frances, the trial court awarded the marital interests in the three condominium units, her pension plan, and her jewelry. The court

added to these assets the amount of $7,053, which she had withdrawn from the parties' Dreyfus fund subsequent to their separation. Her award thus amounted to $73,831, or approximately 62% of the marital estate.

James was awarded the Dreyfus fund, the life insurance plan, the various shares of stock, and the couple's car. This award amounted to $45,539, or roughly 38% of the estate.

Subsequent to the court's judgment, Frances filed motions to reopen proofs on the grounds that additional evidence required a modification of the court's judgment in dissolution of the marriage. Specifically, she alleged that she had lost her job, that James' application for the National Institute of Health grant had not been approved and he was about to enter the job market as an orthopedic surgeon, and that he had breached an out-of-court agreement to cooperate with her in procuring a Jewish divorce. The trial court denied these motions, and the present appeal by Frances ensued.

## I

Frances argues that the trial court committed reversible error in excluding evidence of the value of James' degree and license to practice surgery. Specifically, Frances sought below to introduce expert testimony of the total future increased value of James' income from this advanced degree and license. This was to be determined by subtracting from his average lifetime earnings with his degree and license the average lifetime earnings he would have acquired with only his bachelor's degree in science, for a total of $1,172,000. Frances advances two alternative arguments in support of her contentions that exclusion of this evidence constituted reversible error. First, she claims that James' license and degree are marital property within the contemplation of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*). Alternatively, she contends that this evidence should have been admitted to prove the extent of the parties' relative earning capacities, as this is one factor the trial court is to consider in order to distribute the marital estate between the spouses in a just and equitable manner. Ill. Rev. Stat. 1981, ch. 40, par. 503(d)(7).

## A

Frances initially claims that James' license and degree should be considered marital property under the Act. She concedes that this issue has never been definitively resolved under Illinois law, and urges us to adopt what appears to be the view of a minority of courts

in other jurisdictions that a spouse's professional license or degree earned while married is marital property subject to distribution.

Our research indicates that 23 jurisdictions have considered the appropriate manner in which to distribute the marital assets and award maintenance or other relief when the spouse who engaged in employment in order to support the family unit while the other pursued academic interests argues upon dissolution of the marriage that the student spouse's degree or license constitutes marital property. Of these, 16 have held that the student spouse's degree or license is not marital property. (Arizona (*Pyeatte v. Pyeatte* (Ariz. App. 1982), 135 Ariz. 346, 661 P.2d 196; *Wisner v. Wisner* (Ariz. App. 1981), 129 Ariz. 333, 631 P.2d 115); California (*In re Marriage of Sullivan* (1982), 134 Cal. App. 3d 634, 184 Cal. Rptr. 796 (hearing granted); *In re Marriage of Aufmuth* (1979), 89 Cal. App. 3d 446, 152 Cal. Rptr. 668, *overruled on other grounds*; *In re Marriage of Lucas* (1980), 27 Cal. 3d 808, 614 P.2d 285, 166 Cal. Rptr. 853; *Todd v. Todd* (1969), 272 Cal. App. 2d 786, 78 Cal. Rptr. 131); Colorado (*In re Marriage of Graham* (1978), 194 Colo. 429, 574 P.2d 75; *In re Marriage of McVey* (Colo. App. 1981), 641 P.2d 300); Connecticut (*Zahler v. Zahler* (Conn. Super. Ct., New Haven Dist., Aug. 5, 1982), 8 Fam. L. Rptr. 2694); Delaware (*Wright v. Wright* (Del. Fam. Ct. 1983), 469 A.2d 803); Florida (*Hughes v. Hughes* (Fla. App. 1983), 438 So. 2d 146; *Severs v. Severs* (Fla. App. 1983), 426 So. 2d 992); Indiana (*McManama v. McManama* (1980), 272 Ind. 483, 399 N.E.2d 371); Iowa (*In re Marriage of Horstmann* (Iowa 1978), 263 N.W.2d 885); Kentucky (*Inman v. Inman* (Ky. 1982), 648 S.W.2d 847; *McGowan v. McGowan* (Ky. App. 1983), 663 S.W.2d 219; *Leveck v. Leveck* (Ky. App. 1981), 614 S.W.2d 710); New Jersey (*Mahoney v. Mahoney* (1982), 91 N.J. 488, 453 A.2d 527); New Hampshire (*Ruben v. Ruben* (N.H. 1983), 461 A.2d 733); New Mexico (*Muckleroy v. Muckleroy* (1972), 84 N.M. 14, 498 P.2d 1357); Oklahoma (*Hubbard v. Hubbard* (Okla. 1979), 603 P.2d 747); Texas (*Frausto v. Frausto* (Tex. Civ. App. 1980), 611 S.W.2d 656); Wisconsin (*In re Marriage of Lundberg* (1982), 107 Wis. 2d 1, 318 N.W.2d 918); Wyoming (*Grosskopf v. Grosskopf* (1984), 677 P.2d 814).) Four jurisdictions have declined to resolve the specific issue, concluding instead that the degree or license is to be considered in determining the distribution of property, maintenance, or some form of equitable reimbursement. (Minnesota (*In re Marriage of DeLaRosa* (Minn. 1981), 309 N.W.2d 755); Missouri (*In re Marriage of Lowrey* (Mo. App. 1982), 633 S.W.2d 157); Ohio (*Lira v. Lira* (1980), 68 Ohio App. 2d 164, 428 N.E.2d 445); Washington (*Washburn v. Washburn* (1984), 101 Wash. 2d 168, 677 P.2d 152 (*en banc*)).) There are three jurisdic-

tions in which some authority may be found to support the contention that a degree or license may be marital property in certain circumstances. In Michigan, courts have concluded that a degree or license is to be treated as a marital asset only where there is no marital property to distribute and the contributing spouse is not entitled to maintenance. (Compare *Watling v. Watling* (1983), 127 Mich. App. 624, 339 N.W.2d 505 (substantial marital estate; degree held not marital property) with *Woodworth v. Woodworth* (1983), 126 Mich. App. 258, 337 N.W.2d 332 (no marital estate, contributing spouse not entitled to maintenance; degree held marital property).) In New York, one court has concluded that an advanced degree was marital property (*O'Brien v. O'Brien* (1982), 114 Misc. 2d 233, 452 N.Y.S.2d 801), while two have held that it was not (*Conner v. Conner* (1983), 97 App. Div. 2d 88, 468 N.Y.S.2d 482; *Lesman v. Lesman* (1982), 88 App. Div. 2d 153, 452 N.Y.S.2d 935.) Finally, in Massachusetts, one trial court has concluded that a husband's degree constituted marital property. *Reen v. Reen* (Mass. Prob. & Fam. Ct., Dec. 23, 1981), 8 Fam. L. Rptr. 1053, 2193.

Courts which have refused to recognize a degree or license as marital property have justified this result either on the grounds that the degree or license is not "property" because it cannot be assigned, transferred, sold, conveyed, pledged, or inherited (*Wisner v. Wisner* (Ariz. App. 1981), 129 Ariz. 333, 340, 631 P.2d 115, 122; *In re Marriage of Graham* (1978), 194 Colo. 429, 432, 574 P.2d 75, 77; *In re Marriage of Horstmann* (Iowa 1978), 263 N.W.2d 885, 891; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 496, 453 A.2d 527, 531; *Ruben v. Ruben* (N.H. 1983), 461 A.2d 733, 735; *Conner v. Conner* (1983), 97 App. Div. 2d, 88, 93 n.1, 468 N.Y.S.2d 482, 487 n.1; *Lesman v. Lesman* (1982), 88 App. Div. 2d 153, 157, 452 N.Y.S.2d 935, 938; *Lira v. Lira* (1980), 68 Ohio App. 2d 164, 167-68, 428 N.E.2d 445, 448; *Hubbard v. Hubbard* (Okla. 1979), 603 P.2d 747, 750; *Frausto v. Frausto* (Tex. Civ. App. 1980), 611 S.W.2d 656, 659; *Grosskopf v. Grosskopf* (Wyo. 1984), 677 P.2d 814, 822); or on the grounds that the degree is not "marital property" because it is not susceptible to joint ownership (*In re Marriage of Aufmuth* (1979), 89 Cal. App. 3d 446, 461, 152 Cal. Rptr. 668, 677; *Todd v. Todd* (1969), 272 Cal. App. 2d 786, 791, 78 Cal. Rptr. 131, 134; *Muckleroy v. Muckleroy* (1972), 84 N.M. 14, 15, 498 P.2d 1357, 1358), or on the grounds that regardless of whether it may be deemed "property" it has no readily ascertainable value. *Hughes v. Hughes* (Fla. App. 1983), 438 So. 2d 146, 148; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 496, 453 A.2d 527, 531.

Courts which have concluded that a degree or license constituted

marital property have focused primarily on the achievement of an equitable result, reasoning that "whether or not an advanced degree can physically or metaphysically be defined as 'property' is beside the point" (*Woodworth v. Woodworth* (1983), 126 Mich. App. 258, 263, 337 N.W.2d 332, 335; see also *O'Brien v. O'Brien* (1982), 114 Misc. 2d 233, 239-40, 452 N.Y.S.2d 801, 805) and observing that the valuation of a degree according to its future earning potential is not any more speculative than similar analyses in the contexts of personal injury, wrongful death, or worker's compensation. *Woodworth v. Woodworth* (1983), 126 Mich. App. 258, 266-67, 337 N.W.2d 332, 336; see also *O'Brien v. O'Brien* (1982), 114 Misc. 2d 233, 240-41, 452 N.Y.S.2d 801, 806.

Notwithstanding this seeming divergence of opinion on the characterization of a degree or license, there is nevertheless clear agreement that the contributing spouse should be entitled to some form of compensation for the financial efforts and support provided to the student spouse in the expectation that the marital unit would prosper in the future as a direct result of the couple's previous sacrifices. (*Pyeatte v. Pyeatte* (Ariz. App. 1982), 135 Ariz. 346, 357, 661 P.2d 196, 207; *Wisner v. Wisner* (Ariz. App. 1981), 129 Ariz. 333, 341, 631 P.2d 115, 123; *In re Marriage of Aufmuth* (1979), 89 Cal. App. 3d 446, 461, 152 Cal. Rptr. 668, 677; *In re Marriage of McVey* (Colo. App. 1981), 641 P.2d 300, 301; *Zahler v. Zahler* (Conn. Super. Ct., New Haven Dist., Aug. 5, 1982), 8 Fam. L. Rptr. 2694, 2695; *Hughes v. Hughes* (Fla. App. 1983), 438 So. 2d 146, 150; *In re Marriage of Horstmann* (Iowa 1978), 263 N.W.2d 885, 890; *Inman v. Inman* (Ky. 1982), 648 S.W.2d 847, 852; *McGowan v. McGowan* (Ky. App. 1983), 663 S.W.2d 219, 223; *Moss v. Moss* (Ky. App. 1982), 639 S.W.2d 370, 375; *Leveck v. Leveck* (Ky. App. 1981), 614 S.W.2d 710, 712; *Watling v. Watling* (1983), 127 Mich. App. 624, 627, 339 N.W.2d 505, 507; *Woodworth v. Woodworth* (1983), 126 Mich. App. 258, 261, 337 N.W.2d 332, 334; *In re Marriage of DeLaRosa* (Minn. 1981), 309 N.W.2d 755, 758; *In re Marriage of Lowrey* (Mo. App. 1982), 633 S.W.2d 157, 160; *In re Marriage of Vanet* (Mo. App. 1976), 544 S.W.2d 236, 241; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 500, 453 A.2d 527, 533; *Lesman v. Lesman* (1982), 88 App. Div. 2d 153, 158, 452 N.Y.S.2d 935, 939; *Conteh v. Conteh* (1982), 117 Misc. 2d 42, 45, 457 N.Y.S.2d 363, 364; *O'Brien v. O'Brien* (1982), 114 Misc. 2d 233, 239, 452 N.Y.S.2d 801, 805; *Hubbard v. Hubbard* (Okla. 1979), 603 P.2d 747, 751; *Frausto v. Frausto* (Tex. Civ. App. 1980), 611 S.W.2d 656, 659; *Washburn v. Washburn* (1984), 101 Wash. 2d 168, 173, 677 P.2d 152, 158; *In re Marriage of Haugan* (1984), 117 Wis. 2d 200, 207, 343 N.W.2d 796,

800; *In re Marriage of Lundberg* (1982), 107 Wis. 2d 1, 14, 318 N.W.2d 918, 923; *Grosskopf v. Grosskopf* (Wyo. 1984), 677 P.2d 814, 822-23.

We believe comparative analysis reveals a developing majority consensus which recognizes three alternative methods to permit such compensation: (1) distribution of marital assets and liabilities, (2) some form of maintenance or alimony, or (3) an equitable monetary award to the spouse based on unjust enrichment or some other equitable principle. Usually, the first alternative, and the most preferred, is to distribute the couple's marital assets and liabilities such that the supporting spouse's past contributions and the student spouse's resulting increased earning capacity are taken into consideration. (See *Wisner v. Wisner* (Ariz. App. 1981), 129 Ariz. 333, 631 P.2d 115; *In re Marriage of Aufmuth* (1979), 89 Cal. App. 3d 446, 152 Cal. Rptr. 668; *Todd v. Todd* (1969), 272 Cal. App. 2d 786, 78 Cal. Rptr. 131; *In re Marriage of McVey* (Colo. App. 1981), 641 P.2d 300; *Wright v. Wright* (Del. Fam. Ct. 1983), 469 A.2d 803; *Hughes v. Hughes* (Fla. App. 1983), 438 So. 2d 146; *Severs v. Severs* (Fla. App. 1983), 426 So. 2d 992; *McGowan v. McGowan* (Ky. App. 1983), 663 S.W.2d 219; *Leveck v. Leveck* (Ky. App. 1981), 614 S.W.2d 710; *Watling v. Watling* (1983), 127 Mich. App. 624, 339 N.W.2d 505; *In re Marriage of Lowrey* (Mo. App. 1982), 633 S.W.2d 157; *In re Marriage of Vanet* (Mo. App. 1976), 544 S.W.2d 236; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 453 A.2d 527; *Ruben v. Ruben* (N.H. 1983), 461 A.2d 733; *Lira v. Lira* (1980), 68 Ohio App. 2d 164, 428 N.E.2d 445; *Daniels v. Daniels* (1961), 20 Ohio Op. 2d 458, 185 N.E.2d 773; *Hubbard v. Hubbard* (Okla. 1979), 603 P.2d 747; *Frausto v. Frausto* (Tex. Civ. App. 1980), 611 S.W.2d 656; *Washburn v. Washburn* (1984), 101 Wash. 2d 168, 677 P.2d 152; *In re Marriage of Haugan* (1984), 117 Wis. 2d 200, 343 N.W.2d 796; *In re Marriage of Lundberg* (1982), 107 Wis. 2d 1, 318 N.W.2d 918; *Grosskopf v. Grosskopf* (Wyo. 1984), 677 P.2d 814; see also *In re Marriage of Angerman* (1980), 44 Colo. App. 298, 612 P.2d 1166; *Greer v. Greer* (1973), 32 Colo. App. 196, 510 P.2d 905.) In this manner, the contributing spouse is awarded an equitable percentage of the benefits the couple has already been able to reap as a result of the other spouse's enhanced professional opportunities. See *Wisner v. Wisner* (Ariz. App. 1981), 129 Ariz. 333, 341, 631 P.2d 115, 123; *In re Marriage of Aufmuth* (1979), 89 Cal. App. 3d 446, 461, 152 Cal. Rptr. 668, 677; *Todd v. Todd* (1969), 272 Cal. App. 2d 786, 791, 78 Cal. Rptr. 131, 134-35; *Wright v. Wright* (Del. Fam. Ct. 1983), 469 A.2d 803, 805-06; *McGowan v. McGowan* (Ky. App. 1983), 663 S.W.2d 219, 224; *Watling v. Watling* (1983), 127 Mich. App. 624, 627, 339 N.W.2d

505, 507; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 504, 453 A.2d 527, 536; *Hubbard v. Hubbard* (Okla. 1979), 603 P.2d 747, 751; *Grosskopf v. Grosskopf* (Wyo. 1984), 677 P.2d 814, 822.

The second alternative, either in addition to or instead of property distribution, is an award in maintenance or alimony. See *In re Marriage of Aufmuth* (1979), 89 Cal. App. 3d 446, 152 Cal. Rptr. 668; *Zahler v. Zahler* (Conn. Super. Ct., New Haven Dist., Aug. 5, 1982), 8 Fam. L. Rptr. 2694; *Hughes v. Hughes* (Fla. App. 1983), 438 So. 2d 146; *Severs v. Severs* (Fla. App. 1983), 426 So. 2d 992; *In re Marriage of Horstmann* (Iowa 1978), 263 N.W.2d 885; *McGowan v. McGowan* (Ky. App. 1983), 663 S.W.2d 219; *Leveck v. Leveck* (Ky. App. 1981), 614 S.W.2d 710; *Vaclav v. Vaclav* (1980), 96 Mich. App. 584, 293 N.W.2d 613; *Moss v. Moss* (1978), 80 Mich. App. 693, 264 N.W.2d 97; *In re Marriage of Lowrey* (Mo. App. 1982), 633 S.W.2d 157; *In re Marriage of Vanet* (Mo. App. 1976), 544 S.W.2d 236; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 453 A.2d 527; *Conteh v. Conteh* (1982), 117 Misc. 2d 42, 457 N.Y.S.2d 363; *Lira v. Lira* (1980), 68 Ohio App. 2d 164, 428 N.W.2d 445; *Daniels v. Daniels* (1961), 20 Ohio Op. 2d 458, 185 N.E.2d 773; *Washburn v. Washburn* (1984), 101 Wash. 2d 168, 677 P.2d 152; *In re Marriage of Haugan* (1984), 117 Wis. 2d 200, 343 N.W.2d 796; *In re Marriage of Lundberg* (1982), 107 Wis. 2d 1, 318 N.W.2d 918; see also *In re Marriage of Graham* (1978), 194 Colo. 429, 547 P.2d 75 (maintenance not requested); *In re Marriage of Angerman* (1980), 44 Colo. App. 298, 612 P.2d 1166.

The third alternative is a separate monetary award to the contributing spouse as compensation for funds advanced to defray the student spouse's educational costs and living expenses. Courts have usually followed this approach when the traditional methods of property distribution and maintenance were not sufficient to reach an equitable result, and have relied upon the trial court's inherent equitable powers and the theory of unjust enrichment to justify such awards. See *Pyeatte v. Pyeatte* (Ariz. App. 1982), 135 Ariz. 346, 661 P.2d 196; *Inman v. Inman* (Ky. 1982), 648 S.W.2d 847; *In re Marriage of DeLaRosa* (Minn. 1981), 309 N.W.2d 755; *Mahoney v. Mahoney* (1982), 91 N.J. 488, 453 A.2d 527; *Hubbard v. Hubbard* (Okla. 1979), 603 P.2d 747; *Washburn v. Washburn* (984), 101 Wash. 2d 168, 677 P.2d 152; see also *McManama v. McManama* (1980), 272 Ind. 483, 399 N.E.2d 371; *Conteh v. Conteh* (1982), 117 Misc. 2d 42, 457 N.Y.S.2d 363; *Grosskopf v. Grosskopf* (Wyo. 1984), 677 P.2d 814.

As previously observed, a minority has adhered to the fourth alternative of recognition of a degree or license as a marital asset. (See *Woodworth v. Woodworth* (1983), 126 Mich. App. 258, 337 N.W.2d 332;

*O'Brien v. O'Brien* (1982), 114 Misc. 2d 233, 452 N.Y.S.2d 801; *Reen v. Reen* (Mass. Prob. and Fam. Ct., Dec. 23, 1981), 8 Fam. L. Rptr. 1053, 2193.) In our opinion, these decisions did not intend adoption of a rule that a license or degree earned during a marriage should *always* be a marital asset *per se*, however. Instead, they represented a last-resort method to justify a compensatory award to the supporting spouse for the financial contributions made to the professional academic pursuits of the other spouse, available only where the remedies of property distribution, maintenance, or unjust enrichment awards were not available in order to reach an equitable result. See *Watling v. Watling* (1983), 127 Mich. App. 624, 626-28, 339 N.W.2d 505, 506-07, interpreting *Woodworth v. Woodworth* (1983), 126 Mich. App. 258, 337 N.W.2d 332; *O'Brien v. O'Brien* (1982), 114 Misc. 2d 233, 452 N.Y.S.2d 801 (license and degree held marital property given "unusual circumstances" of case in which wife supported husband through medical school, couple divorced shortly after husband's attainment of degree and license, there were no substantial marital assets, and wife was not entitled to maintenance).

In our view, Illinois law presently provides an ample method for compensation to the contributing spouse through traditional remedies, without the need to resort to adoption of a hard and fast rule that a spouse's degree or license earned during the marriage is to be considered a marital asset even under limited circumstances.

We agree with the trial court's determination in the case at bar that James' degree and license did not constitute property. In Illinois, the term property has been defined as "a word of the very broadest import, connoting any tangible or intangible *res* which might be made the subject of ownership." (*In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 1026, 423 N.E.2d 1201, *appeal denied* (1981), 85 Ill. 2d 565.) In order to be property within the ambit of the Act, however, the *res* must be in the nature of a present property interest, rather than a mere expectancy interest. (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 660, 397 N.E.2d 511.) An expectancy interest is the "interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent *** or of a beneficiary designated by a living insured who has a right to change the beneficiary." *In re Marriage of Pesheck* (1980), 89 Ill. App. 3d 959, 964, 412 N.E.2d 698.

A degree or license is at most a mere expectancy of some future income or earnings. (See *In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 1027-28, 423 N.E.2d 1201.) Neither has a present assignable value, as neither can be sold as can other items of an intangi-

ble nature such as goodwill of a business (see, *e.g., In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421, *appeal denied* (1981), 85 Ill. 2d 582), nor can either be said to represent a guarantee of receipt of a set amount in the future such as pension benefits. See, *e.g., In re Marriage of Keller* (1982), 108 Ill. App. 3d 556, 439 N.E.2d 44.

Rather than being classified as marital assets, a spouse's professional degree or license, earned while married through the financial support of the other spouse, is a relevant factor in distribution of the couple's marital assets and liabilities. (Ill. Rev. Stat. 1981, ch. 40, par. 503(d); see *In re Marriage of Woodward* (1980), 83 Ill. App. 3d 253, 256, 404 N.E.2d 575.) In addition, each spouse's individual contributions to the marital unit are also relevant to this distribution. (Ill. Rev. Stat. 1981, ch. 40, par. 503(d)(7); see *e.g., In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641, 648, 423 N.E.2d 283, *appeal denied* (1981), 85 Ill. 2d 565.) Maintenance awards, where appropriate, are to be granted according to similar standards which take into account the contributions of the parties, the duration of the marriage, and their relative future earning capacities. (See Ill. Rev. Stat. 1981, ch. 40, par. 504; see also *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 631, 450 N.E.2d 1229.) Finally, although the remedies a trial court may award pursuant to a petition for dissolution of marriage are limited to those specified in the Act (see *Gray v. Gray* (1978), 57 Ill. App. 3d 430, 437, 373 N.E.2d 317), at least one Illinois court has determined that a trial court nevertheless possesses inherent equitable authority to grant relief upon a properly pleaded and proved claim of unjust enrichment presented in conjunction with a petition for dissolution of marriage. *In re Marriage of Robinson* (1981), 100 Ill. App. 3d 437, 444, 429 N.E.2d 183.

■ In the case at bar, the trial court properly followed these principles and guidelines. The court specifically emphasized that it took into consideration both James' greater earning potential and Frances' financial contributions to the marital unit in its award to Frances of a disproportionately greater share of the marital estate. Frances has not argued that this distribution constituted an abuse of discretion, and we can find none in the record before us. See *In re Marriage of Sevon* (1984), 117 Ill. App. 3d 313, 319, 453 N.E.2d 866.

Furthermore, we observe that Frances has made no contention in this appeal that she was entitled to maintenance or equitable relief for unjust enrichment. We also note that she has not disputed the uncontroverted evidence presented by James at the trial court's hearing to prove that his tuition and related educational costs were paid by his

parents, not by Frances. Finally, we observe that Frances' proffered expert testimony valued James' degree and license according to an estimated increased earning capacity which he might possess because of the degree and license, and that such increased earning potential is not a divisible marital asset under Illinois law. (See *In re Marriage of Evans* (1981), 85 Ill. 2d 523, 426 N.E.2d 854; *In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 423 N.E.2d 1201.) We decline to adhere to Frances' view that James' potential increased future earning capacity should be labelled instead as the value of his degree and license and in that guise be considered marital property, in order to avoid the precedent of *Evans* and *Goldstein*.[1]

For the reasons set forth above, we find no error in the trial court's ruling.

## B

■ Frances also contends that the trial court committed reversible error in its refusal to admit her offered expert testimony because such evidence was relevant to the couple's relative future earning capacity. We find no such error.

The Act provides that the court "shall divide the marital property *** in just proportions considering all relevant factors including *** the amount and sources of income *** of each of the parties ***." (Ill. Rev. Stat. 1981, ch. 40, par. 503(d)(7).) In considering this factor, the Act contemplates that the court will need to make only an approximation of the income available to both parties. (*In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262, *appeal denied* (1982), 91 Ill. 2d 581.) The decision to allow or exclude expert testimony is within the sound discretion of the trial court (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079, *appeal denied* (1981), 85 Ill. 2d 576, and where the evidence is cumulative and would not materially alter the outcome of the case, it is not error for the trial court to refuse to allow it. *In re Estate of Letches* (1979), 79 Ill. App. 3d 772, 398 N.E.2d 1043, *appeal denied* (1980), 79 Ill. 2d 634.

Here, both parties testified extensively on their past, current, and future earning potentials. The trial court specifically took into consideration this disproportionate earning capacity in its award of 62% of the marital estate to Frances. Consequently, we find no error.

---

[1]*In re Marriage of Maun* (1983), 110 Ill. App. 3d 1209, relied on by Frances is a Supreme Court Rule 23 Order and has no precedential value. In any event it is inapposite to the case at bar since it held that a husband's *practice* was marital property.

## II

Frances' second argument for reversal of the trial court's judgment rests upon a narrow reading of the trial court's oral pronouncement a few months prior to entry of the court's dissolution judgment. Specifically, she points to the following statement of the trial court as grounds that its judgment was erroneous and therefore should be reversed:

> "Mrs. Weinstein has some jewelry, including *** her engagement ring, and a gold watch and a diamond necklace given to her by Dr. Weinstein which cost about $4,300 ***."

Frances claims that the court clearly found that this jewelry was a gift, and therefore should not have been included as part of the marital estate awarded to her upon dissolution of the marriage. She contends that this error requires reversal of the trial court's judgment and remandment for a redistribution of the marital estate. We disagree.

Section 503 of the Act provides that property acquired by one spouse as a gift is considered nonmarital property. (Ill. Rev. Stat. 1981, ch. 40 par. 503(a)(1).) The section has been interpreted to permit both interspousal gifts as well as gifts from third parties. *In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 416 N.E.2d 1235.

A spouse claiming property as a gift must "show not only delivery, but also that the delivery *** was made 'with the intention of vesting the title absolutely and irrevocably in the donee.'" (*In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 654, 409 N.E.2d 321.) Where the subject matter of an interspousal transfer is property acquired prior to the marriage, the common law presumption of a gift controls, which the "donor" spouse may rebut with clear and convincing evidence. (*In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 416 N.E.2d 1235.) Where the property is acquired during the marriage, however, the Act's presumption in favor of recognition as marital property is controlling, which the "donee" spouse must rebut with clear and convincing evidence. *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.

In the case at bar, the disputed items were of two kinds. The record shows that the engagement ring was acquired prior to the marriage; the gold watch and diamond necklace were purchased during the marriage. James presented undisputed testimony that the engagement ring was purchased by his parents and given to both James and Frances as a wedding gift to them. Thus, the facts here do not present an interspousal transfer of property acquired prior to marriage to which the common law presumption of a gift to Frances

would apply. (See *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028, *appeal denied* (1983), 92 Ill. 2d 579.) Rather, the record reflects that the property was a gift to the couple and consequently part of the marital estate, and that Frances failed to rebut this with clear and convincing evidence to the contrary. (See *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262.) As a result, the trial court did not err in including the ring as part of the marital estate.

■ The gold watch and diamond necklace which Frances also claims as nonmarital property were both purchased subsequent to the marriage. The Act presumes that in such instances the interspousal transfer is nonetheless marital property. (*In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 416 N.E.2d 1235.) Frances introduced only her own testimony that the jewelry was intended as a gift to her personally which would not remain part of the marital estate. The trial court found this insufficient to meet the burden of clear and convincing proof required of Frances to prove her claim, and we can find no abuse of discretion in this determination.

■ Moreover, even assuming *arguendo* that the trial court's determination of the nature of the disputed items was erroneous, a full review of the record demonstrates that it was nonetheless harmless. A trial court's error is not grounds for reversal and remandment where it was of insignificant importance and did not unduly affect the trial court's discretion. (*In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 438 N.E.2d 957.) The jewelry in question had an uncontroverted value of $4,300; the value of the total marital estate, subtracting the worth of the jewelry, was approximately $115,000. The jewelry was thus roughly one-fortieth of the total estate. This amount was an insignificant portion of the total marital property accumulated by the parties during their marriage, and had no special effect on the trial court's distribution of the estate. As a result, we find no reversible error in the trial court's judgment.

### III

■ Lastly, Frances argues that the trial court committed reversible error in its denial of her motions to reopen proofs to show that she had lost her job, that James' salary was about to increase substantially because he was about to begin his career as a surgeon, and that he had breached an out-of-court agreement to obtain a Jewish divorce. Based on the record before us, we cannot conclude that the trial court's denial of these motions was improper.

In considering a motion to reopen proofs, a trial court should take

into account whether there is some excuse for the failure to introduce the evidence at trial, whether the adverse party will be surprised or unfairly prejudiced by the new evidence, whether the evidence is of utmost importance to the movant's case, and whether there are the most cogent reasons to deny the motion. (*Western Transportation Co. v. Republic Molding Co.* (1982), 104 Ill. App. 3d 1081, 433 N.E.2d 1060; *Harper v. Johnson* (1978), 61 Ill. App. 3d 190, 377 N.E.2d 1288.) The decision to deny such motions is within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse thereof. *Stephenson v. Dreis & Krump Manufacturing Co.* (1981), 101 Ill. App. 3d 380, 428 N.E.2d 190, *appeal denied* (1982), 91 Ill. 2d 557.

We cannot say that the trial court abused its discretion in the case at bar, as the evidence Frances sought to introduce was not of utmost importance to her case and likely would not have materially altered the trial court's judgment. The trial court emphasized that it awarded Frances substantial marital assets because of the parties' disparate earning capacities; consequently, any change in James' immediate earnings would not have altered the trial court's distribution of the marital estate. Furthermore, the record indicates that Frances' loss of employment was only a temporary setback in her several years of professional experience, occasioned by economic reversals of the company where she had been employed. This, also, would not have required a redistribution of the marital assets. Finally, James' alleged breach of an out-of-court agreement to obtain a Jewish divorce was not a factor cognizable by the trial court in its distribution of assets. See Ill. Rev. Stat. 1981, ch. 40, par. 503(d).

For the foregoing reasons, the judgment and order of the trial court are affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.