*In re* MARRIAGE OF TERRY R. ABMA, Petitioner-Appellee, and KIMBERLY ANDERLE ABMA, Respondent-Appellant.

First District (1st Division)   No. 1—98—1381

Opinion filed November 1, 1999.

Jerome Marvin Kaplan and Lesly F. Datlow, both of Chicago, for appellant.

Howard A. London, of Chicago, for appellee.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Kimberly Anderle Abma, respondent, appeals from a judgment dissolving her marriage to Terry Abma, petitioner, and dividing the marital property between the parties. Respondent raises two issues on appeal: (1) whether the trial court erroneously denied her motion for a substitution of judge; and (2) whether the trial court abused its discretion in dividing the marital estate. For the reasons that follow, we affirm.

Petitioner and respondent were married on July 27, 1987. At the

time, petitioner and respondent both worked for the Darien police department, but respondent had plans to attend law school. The two decided that it would be best for respondent to complete her legal education in as short a time as possible, so respondent ended her employment with the police department shortly before the wedding. She had earned $22,000 a year from her employment as a police dispatcher.

Respondent then entered law school in January of 1988. Respondent did not work outside the home during her first year of school. Respondent's first year of law school was financed by obtaining student loans and using the funds from her Illinois Municipal Retirement Fund, worth approximately $5,000. The parties used marital funds to pay for respondent's law school textbooks.

In addition to attending law school, respondent contributed to the marital estate by working part time as a research assistant during her second year of law school, and by obtaining a half scholarship for her third and final year of school. Petitioner contributed to the estate by continuing to work full time as a police officer. After respondent graduated and obtained her law license, the parties agreed that she should open her own law practice. Respondent maintained her own practice from May of 1991 until January of 1995. Although she never drew a salary from the practice, she used monies from the business to make mortgage payments, repay student loans and purchase a home computer.

Petitioner owned his own home prior to the marriage, which he later contributed to the marital estate by placing it in joint tenancy with respondent. Before their marriage, the home had a value of approximately $74,000 and a mortgage balance of $11,856. The parties refinanced their home to help pay for respondent's education and law practice. They obtained loans in the amount of $38,000, $50,000, $89,200 and $8,000, using the home as collateral, ultimately reducing the equity in the home from $64,000 to $32,000.

The parties separated in January of 1995. Petitioner then filed a petition for dissolution of the marriage on October 5, 1995. On August 22, 1996, the court scheduled a pretrial conference to take place on October 21, 1996. On that date, the parties participated in a pretrial conference before the trial court. By December 1996 it became clear that a settlement regarding certain marital assets could not be agreed upon, so the court set the matter for trial on March 19, 1997. On February 21, 1997, four months after the pretrial conference, respondent petitioned the court for a substitution of judge, which the court denied. The matter went to trial in July of 1997.

At trial, petitioner testified that he had worked as a deputy police

chief at the Darien police department for 25 years. Prior to the marriage he had a credit card debt of approximately $500. At the end of the marriage, he had incurred $9,000 of credit card debt, owned a 1990 automobile, and had savings of $1,211.

The parties stipulated to their earnings during the marriage. The stipulation detailed each spouse's income throughout the marital years. The stipulation provided that, in 1988, respondent drew no earnings while petitioner earned an annual salary of $43,123. In 1989, petitioner earned $41,919.23, while respondent earned $1,192.75. Petitioner continued to earn a steady annual income as a police chief, with his salary for the final year of the marriage increased to $54,152. Respondent's income, however, peaked in 1991 at $2,088 and declined steadily after 1991. For example, in the years 1992, 1993, and 1994, respondent's law practice cost the marriage $12,899, $24,441, $11,792, respectively.

At the conclusion of the trial, the court issued its findings and distributed the marital assets between the parties. At the time of trial, petitioner, age 50, remained employed as a police officer with the Darien police department at a salary of $67,000, while respondent, age 39, earned approximately $32,000 a year as an attorney with a legal aid clinic. The court further found that at the time petitioner entered into the marriage, his equity in the home amounted to approximately $64,000, but at the time of dissolution, the equity had been reduced to $32,000 as a result of the parties' repeated refinancing. Finally, the court took note of the fact that respondent's student loans cost the marriage $23,776.91, while her legal practice cost the marital estate a total of $42,743.57.

In distributing the marital assets, the court stated that it considered the duration of the marriage, the contribution of each party to the acquisition, preservation, increase or decrease in the property, and the opportunity for each spouse to acquire assets and income in the future. The court awarded to petitioner the complete equity in the marital residence, the furniture, his individual retirement account, the nonmarital portion of his pension plus one half of the marital portion of the pension funds. Respondent received the remaining half of the marital portion of petitioner's pension, and respondent was required to pay her remaining law school debt of approximately $10,000. The court required petitioner to assume the remaining credit card debt from the marriage, in the amount of approximately $9,000. No children were born of the marriage, and the court barred both parties from seeking maintenance. Respondent now appeals.

## ANALYSIS

### I. Respondent's Motion for Substitution of Judge

Respondent initially contends that the trial court erred in denying her motion for a substitution of judge. She asserts that each party has an absolute right to a substitution of judge provided that no substantive rulings have yet been made in the case. Respondent claims that the court erroneously denied her motion based on the occurrence of a pretrial conference. Respondent does not deny taking part in a pretrial conference, but she claims that the court did not make any substantial rulings and therefore should have granted her motion. Petitioner disputes this contention, arguing that respondent's motion was untimely because it was filed after a pretrial conference during which respondent had an opportunity to gain insight as to the trial judge's attitude toward the case based on the settlement recommendation.

■ According to section 2—1001 of the Code of Civil Procedure, either party to a civil action may petition for a substitution of judge for several different reasons. 735 ILCS 5/2—1001 (West 1996). First, either party may petition for, or the court on its own motion may grant, a substitution of judge if the original judge presiding over the case has an interest in the proceedings. 735 ILCS 5/2—1001(a)(1) (West 1996). Second, either party may petition the court for a substitution of judge as of right, provided that the party timely exercises that right. 735 ILCS 5/2—1001(a)(2) (West 1996). Finally, either party may petition for a substitution of judge for cause. 735 ILCS 5/2—1001(a)(3) (West 1996).

We note that effective January 1993, the legislature amended section 2—1001 and added section 2—1001.5 to distinguish between "changes of venue" and "substitutions of judge." 735 ILCS 5/2—1001, 2—1001.5 (West 1994). Case law published prior to January 1993 refers to motions for "change of venue" and motions for a "substitution of judge" interchangeably.

■ Here, respondent filed a motion requesting a substitution of judge as of right, pursuant to section 2—1001(a)(2). Section 2—1001(a)(2) explains that an application for such a substitution may only be granted if it is presented both before the trial or the hearing begins and before the original judge has ruled on any substantial issue in the case. 735 ILCS 5/2—1001(a)(2) (West 1996). The right to a change of venue is absolute where a motion is filed before trial or hearing or before the judge presiding in the case has made any substantial ruling. 735 ILCS 5/2—1001(a)(2) (West 1996); *In re Dominique F.*, 145 Ill. 2d 311 (1991). A petition may be considered

untimely if filed to delay or avoid trial. *Sahoury v. Moses*, 308 Ill. App. 3d 413, 414 (1999). If timely made, the right to a change of venue is mandatory, so that the trial court has no discretion to deny a timely and properly filed petition for change of venue. *Hartnett v. Stack*, 241 Ill. App. 3d 157 (1993).

The reasoning behind this principle is that one should not be compelled to plead his cause before a judge who is prejudiced, whether actually or only by suspicion. The corollary to this principle, however, is that a petition for a substitution of judge must be brought at the earliest practical moment in order to prohibit a litigant from seeking a change of judge only after the litigant has formed an opinion that the judge may be unfavorably disposed toward his or her cause. *In re Daniel R.*, 291 Ill. App. 3d 1003 (1997).

■ Although it is fairly simple to determine whether a party's request for a substitution of judge is filed prior to the commencement of a trial or hearing, the issue of whether the court has ruled on a substantial issue requires a more involved inquiry. A ruling is considered "substantial" in nature when it is directly related to the merits of the case. *Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812 (1996). For example, a ruling on a preliminary injunction is considered a "substantial" ruling for purposes of the statute. *Sarah Bush Lincoln Health Center v. Berlin*, 268 Ill. App. 3d 184 (1994). Similarly, a ruling on a motion to strike and dismiss the opposing party's complaint has been deemed a substantial issue. *Federal National Mortgage Ass'n v. Schildgen*, 252 Ill. App. 3d 984 (1993).

In the case at bar, petitioner filed his petition for dissolution of the marriage on October 5, 1995. The parties appeared in court to continue the matter on several occasions thereafter and, over one year later, on October 21, 1996, they participated in a pretrial conference with Judge Donegan. Four months later, on February 21, 1997, respondent filed her motion requesting a substitution of judge from Judge Donegan. Respondent's motion for substitution of judge alleged in conclusory fashion that there had been no substantive rulings in the case and that she was entitled to a substitution of judge as a matter of right pursuant to section 2—1001.

Petitioner moved to strike respondent's motion and urged the court to deny her request for a new judge as untimely. In his answer to respondent's motion, petitioner asserted that the matter had been before Judge Donegan for approximately seven months; a pretrial conference had occurred; the parties had at one point entered into a settlement; the matter was set for prove-up; and respondent was "judge shopping" because she did not like Judge Donegan's pretrial recommendations. Respondent did not file any reply to petitioner's

answer. The court denied respondent's motion for substitution of judge, based on the fact that the parties had participated in a pretrial conference.

Respondent cites *In re Marriage of Roach* to support her claim that a request for a change of venue filed after the occurrence of a pretrial conference is not untimely. *In re Marriage of Roach*, 245 Ill. App. 3d 742 (1993). However, as petitioner correctly observes, in *Roach*, the court also noted that even in the absence of a substantial ruling in the case, a motion for a change of venue may nonetheless be considered untimely if the parties have had an opportunity to discern the court's disposition toward the merits of the case. *Roach*, 245 Ill. App. 3d at 746.

In addition, the *Roach* decision did not enunciate any specific policy regarding whether pretrial conferences should or should not preclude a party from seeking a substitution of judge. The court in *Roach* also noted that "[e]ven when the trial court has not ruled on a substantial issue, it appears the motion may be denied if the movant has had an opportunity to test the waters and form an opinion as to the court's reaction to his claim" (*Roach*, 245 Ill. App. 3d at 746, citing *In re Marriage of Kozloff*, 101 Ill. 2d 526, 531 (1984)).

In fact, this court has previously expressed reluctance to formulate a hard and fast rule regarding how a pretrial conference affects the timeliness of a motion for substitution for judge. In *Becker v. R.E. Cooper Corp.* (193 Ill. App. 3d 459 (1990)), for example, this court held that the filing of a request for a change of venue was timely, despite the fact that the parties had participated in an extensive, 1½-hour pretrial conference. *Becker*, 193 Ill. App. 3d at 461. After a review of the record, this court concluded that the trial court had neither made a substantial ruling nor expressed its opinion on the merits of the case during the conference. *Becker*, 193 Ill. App. 3d at 461. As a result, this court held that the trial court's denial of the defendant's motion was in error. *Becker*, 193 Ill. App. 3d at 461. The court hesitated to definitively conclude that a pretrial conference could never preclude a request for a substitution of judge. The court in *Becker* noted the potential for abuse in a rule that would allow litigants to test the disposition of a trial judge during a pretrial conference while retaining an absolute right to a substitution of judge. *Becker*, 193 Ill. App. 3d at 464.

This court later upheld the trial court's denial of a substitution of judge after a pretrial conference in *Paschen Contractors, Inc. v. Illinois State Toll Highway Authority*, 225 Ill. App. 3d 930 (1992). In *Paschen*, the defendant moved for a substitution of judge after its attorney attended two off-the-record pretrial conferences. The defendant claimed

that its motion for substitution was timely, despite the occurrence of two pretrial conferences. The court denied the defendant's motion, focusing primarily on the circumstances surrounding the two pretrial conferences that the defendant's attorney had attended. *Paschen*, 225 Ill. App. 3d at 937. The court relied upon the trial court's recollection of those conferences as discussions of the merits of the case. *Paschen*, 225 Ill. App. 3d at 937. Ultimately, based on the trial court's recollection of the two pretrial conferences as substantive discussions, the court concluded that the pretrial conferences had rendered the defendant's subsequent motion untimely. *Paschen*, 225 Ill. App. 3d at 937. Again, this court refused to formulate a *per se* rule but, rather, conducted an individualized inquiry into the nature and extent of the parties' pretrial conference. *Paschen*, 225 Ill. App. 3d at 937.

In this case, the trial court denied respondent's motion for a substitution of judge based on the fact that the parties had participated in a pretrial conference. Respondent urges us to reverse the trial court's denial, asserting that no substantive ruling resulted from the conference. But, as demonstrated above, it is necessary not only to review the rulings that resulted from the parties' pretrial conference, but also to consider the circumstances surrounding the conference in order to determine whether, as the result of the conference, the parties had an opportunity to discern the court's disposition toward the merits of the case. Even in the absence of any substantial rulings, this court has confirmed the impropriety in allowing a party to "shop" for a new judge after discerning the original judge's disposition toward the case. See *Fennema v. Joyce*, 6 Ill. App. 3d 108 (1972); *Becker v. R.E. Cooper*, 193 Ill. App. 3d 459; *Paschen Contractors, Inc. v. Illinois State Toll Highway Authority*, 225 Ill. App. 3d 930.

During pretrial conferences it is not uncommon for a judge to express an opinion or make a recommendation as part of the pretrial process. A party may be able to discern a judge's disposition toward the case from a pretrial conference at which substantive issues are discussed but not decided. Therefore, a request for judge substitution may be untimely if it is made after a pretrial conference. *Paschen*, 225 Ill. App. 3d at 937.

After the pretrial conference in this case the parties entered into settlement negotiations and the matter was set for prove-up. Moreover, the record indicates that petitioner asserted in answer to respondent's motion for substitution of judge the following: (1) the case had been before Judge Donegan for approximately seven months; (2) a pretrial conference had occurred; (3) the parties had entered into a settlement; (4) the matter was set for prove-up; and (5) respondent was "judge shopping because she did not like Judge Donegan's pre-

trial recommendation." We note that respondent did not file a reply or any other document disputing the fact that she participated in a pretrial conference at which Judge Donegan made a pretrial recommendation that she did not like. Petitioner's allegations are unrebutted by the record we have before us.

The pretrial conference occurred on October 21, 1996, at which time Judge Donegan was the assigned trial judge. On November 15, 1996, attorney for petitioner sent respondent's attorney a property settlement agreement based on the October 21 meeting. On November 21, 1996, while respondent's attorney was in possession of the property agreement, an agreed order was entered setting the matter for prove-up. Shortly before the prove-up, petitioner was advised there was no agreement and on the prove-up date of December 20, 1997, an agreed order was entered setting the matter for trial on March 19, 1997. Respondent did not file the motion for substitution of judge until two months later, on February 21, 1997. This motion was filed seven months after the case was assigned to Judge Donegan, four months after the pretrial conference occurred, two months after settlement negotiations failed and only four weeks before trial was scheduled to begin.

We note that it is the appellant's obligation to provide a complete record on appeal. *Tekansky v. Pearson*, 263 Ill. App. 3d 759 (1994). The trial court held seven status hearings and a pretrial conference. Respondent, as appellant, has not provided a transcript of what occurred at any of these proceedings. Respondent has not provided a transcript or bystander's report as to what transpired as a result of respondent's motion for substitution of judge.

■ When the record supplied is insufficient to support a party's claim of error, the reviewing court must presume that the trial court's judgment conformed to the law and comported with the evidence. *Jackson v. Naffah*, 241 Ill. App. 3d 1043 (1993). Moreover, we will not reverse a trial court based on unsupported assertions. Absent a complete record, a reviewing court must conclude that the trial court's decision rests on a sufficient factual basis, and any doubts arising from the incompleteness of the record will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984).

■ Based on the totality of the circumstances, we conclude that Judge Donegan properly denied respondent's motion for substitution of judge. Judge Donegan's pretrial recommendation gave respondent a "unique opportunity to determine the thinking of the trial judge." *Paschen*, 225 Ill. App. 3d at 937. Under the facts of this case the respondent's request for substitution of judge was untimely because it was made after respondent had an opportunity to discern the court's

disposition toward the case. As a result, we affirm the trial court's denial of respondent's motion for a substitution of judge.

## II. Division of Marital Assets

Respondent next contends that the trial court erroneously divided the assets of the marital estate between the parties. Respondent asserts that the court's distribution allowed petitioner to gain a disproportionate award of the marital assets while leaving her with "nothing but debt." She urges us to find that the trial court abused its discretion in making its allocation.

■ In a dissolution of marriage proceeding, the Illinois Marriage and Dissolution of Marriage Act requires the trial court to divide the marital property in just and equitable proportions. 750 ILCS 5/503(d) (West 1996). The trial court must consider all relevant factors including the duration of the marriage, the economic circumstances of each spouse, and the amount and source of each spouse's income. *In re Marriage of Thomas*, 239 Ill. App. 3d 992 (1993). In addition, the court should consider the employability of both parties, their ages, occupations and the reasonable opportunity of each spouse to acquire assets and income in the future. *In re Marriage of Eidson*, 235 Ill. App. 3d 907 (1992). The court should also compensate each spouse for his or her contribution to the marriage. *In re Marriage of Maczko*, 263 Ill. App. 3d 991 (1992).

■ On review, the trial court's distribution of marital assets will only be reversed if its decision is against the manifest weight of the evidence and therefore an abuse of discretion. *In re Marriage of Charles*, 284 Ill. App. 3d 339 (1996). A judgment is against the manifest weight of the evidence only if a contrary conclusion is clearly evident. *Usselmann v. Jansen*, 257 Ill. App. 3d 978 (1994).

■ The court awarded respondent one half of the marital portion of petitioner's pension, to be paid in monthly installments upon petitioner's retirement. The court also required respondent to repay her remaining law school debt of approximately $10,000. Petitioner received the complete equity in the marital residence, the furniture, his individual retirement account and the nonmarital portion of his pension plus one half of the marital portion. The court also required petitioner to assume the remaining credit card debt from the marriage, in the amount of approximately $9,000. In distributing the marital assets, the court stated that it considered the duration of the marriage, the contribution of each party to the acquisition, preservation, increase or decrease in the property, and the opportunity for each spouse to acquire assets and income in the future.

Respondent contends that the trial court erroneously awarded

petitioner a larger share of the marital assets. Specifically, she contests the court's order allowing petitioner to retain the complete equity in the marital home. Petitioner counters by asserting that respondent actually received an overly generous award of one half of the marital portion of petitioner's pension fund, given that respondent did nothing to contribute to that fund's growth during the marriage.

We disagree with petitioner's characterization of respondent's award of one half of the pension benefits as "overly generous." Pension benefits are a form of deferred compensation earned by an employee for his service to an employer. *In re Marriage of Roehn*, 216 Ill. App. 3d 891 (1991). As such, they are treated as earnings, and to the extent that a spouse earned those benefits during the marriage, they are considered marital property. *In re Marriage of Clabault*, 249 Ill. App. 3d 641 (1993). Accordingly, they are subject to division upon dissolution, like any other marital property. *In re Marriage of Pieper*, 79 Ill. App. 3d 835 (1979). The trial court appropriately considered the postmarriage contributions to petitioner's pension fund to be the property of the marital estate, rather than the property of petitioner alone. This is true, even though, as petitioner points out, those contributions resulted solely from petitioner's employment during the marriage and not from any direct contribution on the part of respondent.

However, we also disagree with respondent's assertion that the court awarded petitioner a disproportionate share of the marital assets, leaving her with "nothing but debt." Pension rights, whether matured, vested or nonvested, are considered property under the Illinois Marriage and Dissolution of Marriage Act. *In re Marriage of Campise*, 115 Ill. App. 3d 610 (1983). Pension benefits earned during the course of the marriage are considered marital property despite the fact that they may not actually be distributed until after the dissolution of the marriage. *In re Marriage of Pieper*, 79 Ill. App. 3d 835 (1979). The court assigned respondent the remaining $10,000 of her law school debt but also awarded her one half of the marital portion of petitioner's pension fund, to be paid upon his retirement. The evidence simply does not support respondent's assertion that she received "nothing but debt." The pension benefits granted to respondent are no less valuable merely because she will receive them at a later date.

Respondent further complains that the court placed an economic value on her law degree, thereby transforming the degree into a marital asset. She argues that the court's placement of an economic value on her degree resulted in the court's erroneous award of the full equity in the marital residence to petitioner. Respondent asserts that this valuation was erroneous and contrary to existing law.

Respondent cites *In re Marriage of Weinstein*, 128 Ill. App. 3d 234 (1984), to support her claim of error. In *Weinstein*, the husband began studying for a master's degree prior to the marriage. After the marriage, he continued to study full time for four years, while his wife worked full time in the retail industry. The husband's parents paid for all of his educational expenses, while the couple relied upon the wife's earnings to pay for common living expenses. Eventually, the husband graduated, obtained his doctor of osteopathy license and entered the work force.

Upon dissolution of the marriage, the trial court refused to allow the wife to introduce evidence of the value of the husband's degree and license. *Weinstein*, 128 Ill. App. 3d at 238. On review, the wife claimed that the trial court should have admitted the evidence, arguing that the husband's degree and license constituted marital property subject to division upon dissolution. *Weinstein*, 128 Ill. App. 3d at 238-39. This court affirmed the trial court's ruling, holding that neither a degree nor a license constitutes marital property. *Weinstein*, 128 Ill. App. 3d at 244. However, the court also recognized that one spouse's financial efforts and support should be taken into consideration upon dissolution, particularly when that support ultimately enables the other spouse to earn a professional degree or license. *Weinstein*, 128 Ill. App. 3d at 245.

Unlike the situation presented by *Weinstein*, in this case, the parties relied upon the marital estate not only for common living expenses, but also to fund a substantial portion of respondent's legal education. In addition, at the conclusion of respondent's schooling, the parties continued to rely upon the marital funds to support respondent's legal practice, which operated at a loss for approximately three years. The trial court properly considered the fact that petitioner consistently made substantial monetary contributions to the estate, while respondent did not. In fact, respondent's law practice alone cost the marital estate in excess of $40,000.

Although respondent claims that the resulting award to petitioner of the complete equity in the home was an improper interpretation of the rule enunciated by *Weinstein*, we disagree. *Weinstein* clearly stated that "the contributing spouse should be entitled to some form of compensation for the financial efforts and support provided to the student spouse in the expectation that the marital unit would prosper in the future." *Weinstein*, 128 Ill. App. 3d at 241.

The trial court did not classify respondent's law degree as a marital asset or place a fair market value on the degree. Rather, the court properly applied the holding in *In re Marriage of Weinstein* by ruling that petitioner was entitled to be compensated for the financial efforts

and support provided to respondent. The trial court, following *Weinstein*, recognized that respondent's law degree, earned through the financial support of petitioner, was a relevant factor in arriving at a fair distribution of the couple's marital assets and liabilities. "Rather than being classified as marital assets, a spouse's professional degree or license, earned while married through the financial support of the other spouse, is a relevant factor in distribution of the couple's marital assets and liabilities." *Weinstein*, 128 Ill. App. 3d at 245.

Finally, respondent argues that the court punished her for not earning a higher salary as an attorney. Respondent claims that observations made by the court regarding her earning potential demonstrate the court's decision to penalize her for not obtaining a higher-paying job. While the court's assertion that the average Illinois attorney makes "three or four times" the amount of respondent's salary is unsupported by any evidence in the record, we disagree that this demonstrates the court's opinion that respondent should be earning a higher salary. Taken in context, the court's observations demonstrate the court's appropriate consideration of the relevant statutory factors, such as the respective ages of the parties, their employability and the opportunity of each spouse to acquire assets in the future. 750 ILCS 5/503(d) (West 1996).

The court appropriately observed that respondent is 11 years younger than petitioner, has earned a graduate level degree and obtained a professional license. Petitioner, on the other hand, does not have a higher level education, and is 11 years closer to retirement age than respondent. A fair and equitable distribution of assets does require the court to take the surrounding circumstances of the parties into account. *In re Marriage of Nelson*, 297 Ill. App. 3d 651 (1998). In addition, the Illinois Marriage and Dissolution of Marriage Act requires the trial court to take note of these very considerations. 750 ILCS 5/503(d)(8), (d)(11) (West 1996).

For the foregoing reasons, we find the court properly denied respondent's motion for substitution of judge and the court did not abuse its discretion in distributing the marital assets. We therefore affirm the judgment of the circuit court.

Affirmed.

RAKOWSKI and GALLAGHER, JJ., concur.