THIRD DIVISION
February 6, 2008

No. 1-07-0417

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from |
| | ) | the Circuit Court |
| KATHLEEN M. JAMIESON, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 02 D 18463 |
| and | ) | |
| | ) | |
| EDWARD S. JAMIESON, | ) | Honorable |
| | ) | Kathleen G. Kennedy, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____JUSTICE THEIS delivered the opinion of the court:

Following the entry of a judgment for dissolution of marriage, respondent, Edward S. Jamieson, sought review of a qualified domestic relations order (QDRO) entered by the circuit court of Cook County, awarding a share of Edward's profit-sharing benefits to petitioner, Kathleen M. Jamieson. Edward contends on appeal that the QDRO violates the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 et seq. (2000)), and is contrary to the parties' marital settlement agreement because it grants Kathleen increased benefits not otherwise provided for under Edward's profit-sharing plan. For the following reasons, we affirm the judgment of the circuit court.

1-07-0417

BACKGROUND

On June 30, 2006, the circuit court entered a judgment for dissolution of marriage incorporating the terms of the parties' marital settlement agreement. Article X of the agreement addressed the division of property and the allocation of assets. Specifically relevant to this appeal, the agreement provided as follows:

> "a. **Name of Plan**. It is intended that the Wife shall receive an interest in the Husband's benefits in the Jamieson and Associates Money Purchase Pension Trust, and the Husband shall cooperate in entering a Qualfied Domestic Relations Order (QDRO) to effectuate this intent. Said [QDRO] shall include the following information and provisions:

> \* \* \*

> iii. **Description of Benefit to be Transferred to Alternate Payee**. 55% of the marital portion of the total benefits accrued by the Participant under the Plan, as of the date of entry of Judgment of Dissolution of Marriage, shall be segregated into a separate account established in the Alternate Payee's name and invested in accordance with the Plan provisions."

Thereafter, the parties submitted separate draft QDROs for the court's approval. The

1-07-0417

QDRO submitted by Edward provided in pertinent part as follows:

"**Amount of Alternate Payee's Benefit**:

*Amount of Assignment*: This Order assigns to Alternate Payee * * * 55% of the money purchase account of the Participant's *Total Account Balances*, of said above accounts as determined by the Plan on or before June 30, 2006.

*Post-Divorce Contributions Attributable to Periods Before Divorce*: In the event that the Plan made any contributions to the Participant's account(s) after June 30, 2006, but that are attributable to periods before this date, then such Total Account Balance shall further include such contributed amounts."

The draft QDRO submitted by Kathleen provided, in pertinent part:

"**Amount of Alternate Payee's Benefit**:

Amount of assignment: This Order assigns to Alternate Payee * * * 55% of the money purchase account of the Participant's Total Account Balances, of said above accounts as determined by the plan for Plan Year ending September 30, 2005.

Post-Divorce Contributions Attributable to Periods Before Divorce: In the event that the Plan made any contributions to the Participant's account(s) for Plan Year ending September 30, 2006, then the Alternate Payee shall receive 41.25% (which is 55% of

> 75% of the Plan Year) of such contributions as of September 30, 2006."

Additionally, in October 2006, the circuit court heard testimony from Sandor Goldstein, Edward's consulting actuary, and Larry Shippee, the plan administrator, with regard to the nature of the plan and the way it is funded and valued. These experts explained that the Jamieson & Associates, Ltd. 401(k) plan at issue, as it relates to Edward, is a profit-sharing plan. The plan is made up of a pooled set of assets in a trust for the benefit of all participants in the plan. These assets are valued annually on September 30. At that time, the earnings that have accrued in the plan since the prior September, along with any discretionary contributions made by the employer, are allocated among the participants to their individual accounts.

The earnings are allocated based on a participant's individual account balance for the prior year. Therefore, for example, if a participant's balance represented 25% of the total assets in the trust, he would be entitled to 25% of the earnings that have accrued throughout the year on September 30. The contributions are generally allocated based on a participant's salary. The earnings and contributions are only allocated to participants employed on September 30 and are credited to participants' individual accounts as of September 30 for that fiscal year. If a participant is terminated or withdraws from employment prior to September 30, he would only be entitled to the balance in his account as of the previous year end. He would not be entitled to earnings or contributions for that fiscal year. Those benefits would then be allocated among the remaining participants. Thus, any growth in the profit-sharing plan enures to the benefit of those who are employed at the end of the fiscal year.

1-07-0417

The parties stipulated that it was possible to value the plan as of a date different than September 30, and that Edward was a participant in the plan throughout the entire fiscal year 2005-2006. Mr. Shippee also indicated that if the domestic relations order provided Kathleen with a percentage of Edward's benefits based on the length of the marriage during the plan year valued as of September 30, 2006, as the plan administrator, he had the authority to award that benefit to Kathleen as long as it was not payable until after September 30, 2006.

After the hearing, on January 16, 2007, the circuit court ruled as follows:

> "The QDRO proposed by Kathleen Jamieson takes into account what occurred between the last valuation date and the dissolution judgment date and provides for a calculable distribution that is consistent with the parties' agreement and the judgment incorporating their agreement. Edward Jamieson presented insufficient evidence of an impact on other Plan participants to support a conclusion that entry of the QDRO proposed by Kathleen Jamieson is impermissible."

Accordingly, the circuit court entered an order consistent with the QDRO presented on behalf of Kathleen. Edward filed a timely appeal.

ANALYSIS

Edward contends that the QDRO entered by the circuit court erroneously awarded Kathleen an interest in the value of the plan after September 30, 2005, and provides her with an increased benefit not available to other participants in the plan in violation of ERISA and the

marital settlement agreement. He asserts that she was only entitled to "55% of the marital estate in the Jamieson Plan as of September 30, 2005."

The resolution of this issue involves the interplay between ERISA and state domestic relations laws. Generally, ERISA restricts the alienation of certain retirement benefits. 29 U.S.C. §1056(d)(1) (2000). However, under an important exception to this principle, in a divorce or dissolution of marriage proceeding, ERISA permits a state court to enter a QDRO which recognizes the existence of an alternate payee's right to receive a portion of the participant's retirement benefits as marital property. 29 U.S.C. §1056(d)(3)(A), (d)(3)(B)(i) (2000). To be a valid QDRO, the domestic relations order must comply with specific requirements set forth in ERISA. See, *e.g.*, 29 U.S.C. §1056(d)(3)(c), (d)(3)(D) (2000). Specifically related to this appeal, the domestic relations order meets those requirements only if the order (i) "does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan"; and (ii) "does not require the plan to provide increased benefits (determined on the basis of actuarial value)." 29 U.S.C. §1056(d)(3)(D)(i), (d)(3)(D)(ii) (2000).

Initially, Edward argues that by awarding Kathleen a share of Edward's interest in the plan for a period of time after the September 2005 valuation date until June 30, 2006, the date of dissolution, Kathleen was provided with a benefit not otherwise provided for under the plan. Edward does not identify with any particularity any specific provision of the plan that is violated by the QDRO. Rather, he generally asserts that Kathleen should be treated as if the participant terminated or left the company. Under the plan, if an employee terminates or leaves the company, the plan provides that the participant's interest in the plan is determined as of the preceding

valuation date and all contributions and earnings occurring after that date would remain in the plan for the benefit of the remaining participants.

However, as the plan administrator explained during the hearing, a judgment for dissolution does not act as a terminating event as it relates to Edward's interest in the plan. Additionally, Shippee specifically indicated that the alternate payee is "not treated identical to a terminated employee" under the plan. Edward has not presented any evidence in the adoption agreement of the plan that would conflict with that interpretation. Furthermore, the QDRO entered by the court recognized that Kathleen's entitlement to any contributions was indeed contingent on the plan making a contribution to his account, and also recognized that Edward had not terminated employment. Moreover, Shippee testified that he was authorized to award the benefit to Kathleen under the plan "[a]s long as it wasn't payable until after September 30, 2006." Accordingly, we find no merit to Edward's contention that Kathleen received a benefit not otherwise provided for under the plan.

Edward additionally argues that by awarding Kathleen a share of his interest in the plan for periods after the September 30, 2005, valuation date until the date of dissolution, the court erroneously awarded her increased benefits. Edward has presented no evidence to the circuit court or to this court that under the QDRO the plan was actually required to award her any more than Edward was entitled to under the plan. Edward had earned benefits that were valued on September 30, 2005. Additionally, he earned benefits for the plan year ending September 30, 2006. The parties were married during a percentage of that plan year. Kathleen is simply receiving a percentage of the marital portion of those benefits to which Edward was entitled under

the plan.

The award to Kathleen is not an "increased benefit" but, rather, is consistent with Illinois law and the parties' marital settlement agreement. Pension benefits earned during the course of the marriage are considered marital property despite the fact that they may not actually be distributed until after the marriage. In re Marriage of Abma, 308 Ill. App. 3d 605, 615, 720 N.E.2d 645, 654 (1999). Those benefits have been described as a form of deferred compensation earned by an employee for his service to an employer. Abma, 308 Ill. App. 3d at 615, 720 N.E.2d at 654. As such, they are treated as earnings, and to the extent that a spouse earned those benefits during the marriage, they are considered marital property. Abma, 308 Ill. App. 3d at 615, 720 N.E.2d at 654.

The domestic relations order entered by the circuit court takes into account what occurred between the last valuation date of September 30, 2005, and the date of dissolution by merely supplying a method to calculate the percent of his contribution to which she was entitled during the nine months of the fiscal year in which the parties were married. The court found that to be a reasonable method to value Edward's interest in the plan as of the date of dissolution, which is what the parties agreed to under the marital settlement agreement. The circuit court additionally found that Edward failed to show how any other participant in the plan would be impacted by implementing that method. We find that method to be a reasonable way of calculating her share of Edward's interest in the Plan up to the date of dissolution and not contrary to their agreement.

Indeed, Edward acknowledged in his own draft QDRO submitted to the circuit court that Kathleen would be entitled not only to 55% his account balance as of September 30, 2005, but,

also, to postdivorce contributions made after the divorce, but attributable to periods before the divorce. Accordingly, for all of the foregoing reasons, the circuit court entered a proper QDRO which is consistent with ERISA and the parties' marital settlement agreement. The judgment of the circuit court is affirmed.

Affirmed.

QUINN, P.J., and GREIMAN, J., concur.

*In re* MARRIAGE OF

KATHLEEN M. JAMIESON,

Petitioner-Appellee,

and

EDWARD S. JAMIESON,

Respondent-Appellant.

No. 1-07-0417

Appellate Court of Illinois
First District, Third Division

Filed: February 6, 2008

JUSTICE THEIS delivered the opinion of the court.

Quinn, P.J., and Greiman, J., concur.

Appeal from the Circuit Court of Cook County
Honorable Kathleen Kennedy, Judge Presiding

For RESPONDENT-
APPELLANT

Barry H. Greenburg
Jewel N. Klein
Law Firm of Barry H. Greenburg
180 North LaSalle Street, Suite 3150
Chicago, IL 60601

For PETITIONER-
APPELLEE

Anne M. Coladarci
John A. Coladarci
Coladarci and Coladarci
155 North Michigan Avenue, Suite 375
Chicago, IL 60601