SECOND DIVISION

No. 1-10-0497

| | | |
|---|---|---|
| JANIS B. REDA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| | ) | |
| v. | ) | No. 85 D 26132 |
| | ) | |
| | ) | |
| ESTATE OF MARIO R. REDA, | ) | Honorable |
| | ) | Mark Lopez, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Karnezis concurred in the judgment and opinion.

## OPINION

The marriage of plaintiff Janis B. Reda and decedent Mario Reda ended in divorce in 1988. Janis was awarded a half interest in Mario's pension which remained in the pension until Mario's death in 2007. The circuit court entered judgment in Janis' favor against defendant, the estate of Mario R. Reda (Estate), for $161,121 finding that at the time of the divorce her one-half interest in the pension was $32,460 and that she was entitled to receive the interest that had accrued in the pension plan on her half up to the time of Mario's death. A constructive trust was ordered upon the Estate in the amount of the judgment. The Estate appeals, acknowledging that based on the judgment of dissolution of marriage, Janis is entitled to her half of Mario's pension, $32,460, but argues that she is not entitled to any accrual of the value of her half of the pension

from the time of the judgment of dissolution of marriage in 1988 until Mario's death in 2007. We affirm, finding the circuit court's judgment in the amount of $161,121 was proper based on the intent of the parties at the time of the dissolution of marriage to provide Janis one half of Mario's pension, and that it would be inequitable for the Estate to be unjustly enriched with the interest that had accrued in the pension plan on her half up to the time of Mario's death.

## JURISDICTION

On January 19, 2010, the circuit court entered its final judgment denying the Estate's motion to reconsider. On February 17, 2010, the Estate filed its notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

## BACKGROUND

Mario and Janis Reda were married for 23 years. In 1988, their marriage ended in a divorce. During their marriage, Mario was an employee of the College of DuPage, in DuPage County, Illinois and contributed to the State University Retirement System of Illinois (SURS). At issue in this case is Janis's interest in Mario's pension plan through SURS. The judgment for dissolution of marriage, which incorporated an oral marital settlement agreement between the parties, addressed the pension plan under paragraph (P) of the judgement for dissolution of marriage. Paragraph (P) states, in relevant part:

"P. Mario currently has an interest in the State University

Retirement System Pension of Illinois, hereinafter designated 'the

2

pension plan' ***.

    1. *Current Contribution.* Mario's total cash contributions to the pension plan, plus interest thereon, was currently valued at $64,920 as of January 1, 1988.

    2. *Termination of Employment.* In the event Mario shall, for any reason whatsoever, regardless of cause, prior to retirement, cease to be an 'employee,' *** or commences a leave of absence or leaves of absence having a total or combined duration of in excess of 2 calender years, *** he shall apply for a refund of his contributions plus interest thereon and pay to Janis within fifteen (15) days from the date of receipt by him of said lump sum pension payment, the sum of $32,460 plus the proportion of the interest earned after December 21, 1987 attributable to the sum of $32,460.

    3. *Death of Mario Prior or Janis Prior to Retirement.* Mario shall obtain within thirty (30) days from the date of entry of the Judgment for Dissolution of Marriage a life insurance policy on his

life or an annuity in the face amount of $32,460.00

payable to Janis as irrevocable beneficiary. ***

Mario shall provide Janis with proof of purchase, the

original life insurance policy or annuity contract and

proof of premium payment on an annual basis ***.

Paragraph (P)(4) of the agreement provided Janis with an interest, upon Mario's retirement, of her half of the pension benefits. Paragraph (P)(4) accounted for the accrued value of Janis's half of the monthly annuity payments Mario would have received during retirement.

Testimony from both Janis and Mario at the hearing regarding their oral agreement reveals they understood and agreed to the terms of the judgment. Specifically, Janis testified:

" MS. VEON [Attorney for Janis]: In addition to that, Mr.

Reda has agreed to *obtain an insurance policy or an annuity which*

*will pay you your portion of the death benefit based on what Mr.*

*Reda currently has accrued in the pension*, if in fact he should

remarry and then die prior to you receiving your portion of the

death benefit in that plan?

JANIS: That's correct." (Emphasis added.)

Mario testified that he understood and accepted the terms of the judgment and that he agreed with Janis's testimony regarding the judgment. Specifically, he testified:

"MR. SINGER [Attorney for Mario]: Now do you understand the sum and

substance of the agreement, including the pension benefits?

4

MARIO: Yes. I do."

Mario failed to obtain a life insurance policy or annuity in the amount of $32,460 as he was required to do under paragraph (P)(3) of the judgment of dissolution of marriage. In December of 1988, Mario designated his three children as primary beneficiaries under the pension plan and his brother as a contingent beneficiary. Mario later married Lisa M. Reda; two children were born of that union. In June of 2002, Mario changed his beneficiary designation under his pension, designating Lisa and his two children from his second marriage as primary beneficiaries and changing his three children from his first marriage to contingent beneficiaries. Janis is not mentioned on either the December 1988 or June 2002 beneficiary designation forms Mario filed with SURS.

On June 19, 2007, Mario died. At the time of his death, Mario was still an employee of the College of DuPage and his pension plan, consisting of contributions and interest, had grown to over $730,000. Following Mario's death, SURS began distributing the death and survivor benefits of the pension plan to Lisa and Mario's two children from his marriage to Lisa.

On August 28, 2009, Janis filed an amended motion for entry of judgment, requesting judgment be entered in her favor in the amount of $191,581, plus attorney fees and costs based on Mario's alleged breach of the judgement for dissolution of marriage. Janis requested that a constructive trust be imposed on the Estate. On October 13, 2009, following a hearing on the matter, the circuit court found paragraph (P)(3) of the judgment for dissolution of marriage to be the controlling provision and ordered judgment be entered in favor of Janis in the amount of $32,460, representing one half of Mario's pension at the time of their divorce in 1988. The court

ordered a constructive trust on the Estate, denied the Estate's claim of *laches*, denied Janis's request for prejudgment interest and attorney fees, and ordered that statutory interest be paid on the judgment of $32,460 from the date of the judgment of dissolution of marriage until the Estate fully paid this obligation. The court also found it did not have jurisdiction over Lisa Reda and denied, as moot, Janis's request for a constructive trust against her.

On November 12, 2009, the Estate filed a motion to reconsider, urging the circuit court to vacate the portion of the October 13, 2009, order providing for statutory interest from the date of the judgment of dissolution of marriage, October 5, 1988. The Estate argued that, instead, the court should enter an order awarding postjudgment interest to Janis from the date of Mario's death, June 19, 2007. Following a hearing on the Estate's motion to reconsider, the circuit court, on January 19, 2010, vacated the sections of the October 13, 2009, order awarding Janis $32,460, with statutory interest accruing from the date of judgment of dissolution of marriage and entered judgment against the Estate in the amount of $160,121. The amount of $160,121, included Janis's share of the pension at the time of the judgment of dissolution of marriage and the interest Janis's share accrued until Mario's death. The January 19, 2010, order did not provide for statutory interest. The circuit court reasoned that "[w]hen I read the judgment language and what was at issue here, without any question Jani[s] was awarded a portion of his pension benefits, that being a marital asset." In response to the Estate's question regarding the life insurance or annuity under paragraph (P)(3), which Mario failed to obtain, the court stated:

> "Counsel, what that did is it, in my view, simply preserved
>
> the value of her interest on the date of judgment, nothing more than

6

that, because there's two separate things here.

There was the life insurance, and her interest in his pension going forward, and that's the part that the decedent didn't do anything with that, and therefore, that's why the trust is imposed, because, obviously, I'd think you have the same situation, is even if he had the life insurance policy, and they paid out the [$]32,460 that was only the value of her interest on the date of judgment without any consideration for the accumulated value of that."

ANALYSIS

Before this court, the Estate argues that Janis is only entitled to $32,400 based on her right to half of Mario's pension at the time of their divorce in 1988. Specifically, the Estate argues that under section (P)(3) of the judgment of dissolution of marriage, Janis is only entitled to $32,400, not a sum to include any interest or accrual value.[1] Janis argues that in the judgment of dissolution of marriage, she was awarded one-half of Mario's then-accrued pension, plus any later accrual value to her initial share on account of pension investments. She argues that the judgment further required Mario to secure payment of her share by maintaining a life insurance or annuity policy naming her as beneficiary. The judgment of dissolution of marriage incorporated the parties' oral marital settlement agreement. The interpretation of a marital settlement

---

[1] The Estate argues that the circuit court erred in awarding statutory interest on the amount of $32,400 in its October 13, 2009, order. However, this argument is irrelevant on appeal as the record is clear that the circuit court's January 19, 2010, order vacated the part of the October 13, 2009, order that awarded statutory interest from the date of the judgment of dissolution of marriage.

agreement is a question of law and, thus, our review is *de novo. Blum v. Koster,* 235 Ill. 2d 21, 33 (2009).

A pension benefit defers compensation to an employee until a future date. *In re Marriage of Abma*, 308 Ill. App. 3d 605, 615 (1999). Upon dissolution of a marriage, pension benefits are subject to division between the parties. *Id.* Further, "[p]ension benefits earned during the course of the marriage are considered marital property despite the fact that they may not actually be distributed until after the dissolution of the marriage." *Id.*

The terms of a marital settlement agreement, or in this case, the oral marital settlement agreement incorporated into the judgment of dissolution of marriage, are to be construed using the same rules as contract construction. *Blum,* 235 Ill. 2d at 33; *In re Marriage of Druss*, 226 Ill. App. 3d 470, 475 (1992) ("provisions of marital settlement agreements and of dissolution judgments which incorporate such agreements are interpreted under the same rules governing the construction of contracts"). We must look to the language of the instrument to determine the parties' intent. *Blum,* 235 Ill. 2d at 33. The language of the instrument must be " 'given its plain and ordinary meaning.' " *In re Marriage of Karafotas,* 402 Ill. App. 3d 566, 571 (2010) (quoting *Gallagher v. Lenart,* 226 Ill. 2d 208, 233 (2007)). If the language of the instrument is unambiguous, we must determine the parties' intent solely from the terms of the instrument without considering parol or extrinsic evidence. *Druss,* 226 Ill. App. 3d at 475. We must consider the instrument as a whole, and the parties' intent "is not to be determined from detached portions of a contract or from any clause standing by itself." *Karafotas,* 402 Ill. App. 3d at 571.

In this case, the language of the judgment of dissolution of marriage and the oral marital

settlement agreement, as testified to by both Janis and Mario, show their intent for Janis to have one-half of Mario's pension based on the amount accumulated at the time of their divorce. *Blum,* 235 Ill. 2d at 33 ("the court must ascertain the parties' intent from the language of the agreement"). Paragraph (P) of the judgment of dissolution of marriage outlines the parties' rights and obligations as to Mario's pension. Paragraph (P)(3) specifically states what should happen should Mario die before retirement, and, thus, is the controlling provision here.

By the terms of the agreement, Mario was required to buy a life insurance policy or an annuity in the amount of $32,460 to protect Janis's interest. The Estate argues that Janis should receive only $32,460 based on the requirement to buy life insurance or an annuity in that amount. However, Mario never bought a life insurance policy or annuity as required under the agreement. Mario's breach in failing to buy such a policy or annuity renders it impossible to ascertain what the parties intended, or at a minimum what Mario intended, to be the exact amount Janis would receive upon his death. We note the judgment of dissolution of marriage does not state what type of life insurance or annuity Mario was required to buy. If he had bought a term policy, then no interest would accrue. Had he purchased whole life or an annuity, then interest would have accrued on Janis's $32,460. We cannot speculate what amount Janis would have received at Mario's death had Mario fulfilled his obligation under the agreement and purchased insurance or an annuity. It is a nonevent, which due to Mario's breach in failing to perform becomes immaterial to our analysis. Most importantly, Janis agreed in response to the question during her testimony that Mario was "to obtain an insurance policy or annuity which will pay you your portion of the death benefit based on what [Mario] currently has accrued in his pension, if in fact

he should remarry and then die prior to you receiving your portion of the death benefit plan." The question and her response supports a conclusion that the purpose of paragraph (P)(3) of the judgment was to insure Janis received her share of the death benefits, which included her designated one-half of the pension and the interest that accrues on her one-half up to the time of Mario's death.

In determining the parties' intent, we must consider the whole judgment of dissolution of marriage. *Karafotas,* 402 Ill. App. 3d at 571. Awarding Janis $161,121, the value of her half of the pension at the time of Mario's death, is an outcome consistent with paragraphs (P)(2) and (4) of the judgment of dissolution of marriage, should those provisions have applied. Paragraph (P)(2) makes clear that if Mario had ceased to be an employee, Janis would have received $32,460, plus interest in the form of a lump-sum pension payment. Paragraph (P)(4) would have awarded Janis the accrued value of $32,460 upon Mario's retirement in the form of an annuity. Considering the whole agreement, we find that it was the intent of the parties at the time of the dissolution of marriage to award Janis the accrued value of her half of the pension benefits when the time came for those pension benefits to be distributed.

Awarding Janis only $32,460, as opposed to the accrued value of $161,121, would be inequitable as it would go against the intent of the parties at the time of the agreement. Furthermore, doing so would allow the Estate, through Mario's breach of the marital settlement agreement, to be unjustly enriched. See *Smithberg v. Illinois Municipal Retirement Fund,* 192 Ill. 2d 291, 299 (2000) ("[w]hen a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can

be imposed to avoid unjust enrichment"). By failing to obtain either the life insurance policy or the annuity as required by the agreement, Mario avoided having to pay any premium on those policies or to pay a lump sum on an annuity from the time of the judgment of dissolution of marriage in 1988 until his death in 2007. The money that Mario, and by extension the property that became his estate upon his death, should have paid on the life insurance or annuity policy unjustly enriched Mario at the expense of Janis.

Finally, to award Janis $161,121, comports with the notions of equity and fairness and the ability for the circuit court to enforce its judgment of dissolution of marriage. Our supreme court, in discussing the equitable apportionment of pension benefits in a divorce proceeding, stated:

> "[I]n many cases pension benefits may constitute one of the most important items of property acquired in a marriage of long duration; in some perhaps, it may be the only asset of any significant value. To deprive a domestic relations court of the power to apportion the value of such a significant marital asset, and enforce the apportionment, would, in many cases, deprive the court of the ability to do justice between the parties. A court's authority to enforce its judgment, equitably apportioning marital assets, surely cannot be subordinate to the whims of one of the parties in the divorce proceeding or defeated by his or her blatant violation of the parties' agreement as incorporated in a judgment of dissolution. As we have demonstrated, courts are not powerless to enforce their

11

judgments." *Id.* at 304.

This statement of our supreme court is particularly relevant in the instant case. Mario did not comport with the judgment of dissolution of marriage by purchasing life insurance or an annuity. Pension benefits are a marital asset that is subject to division. *In re Marriage of Abma,* 308 Ill. App. 3d at 615. To enforce its judgment, the circuit court properly awarded Janis the value accrued for her half of the pension benefits. The award of $161,121 comports with notions of justice and fairness and is the most equitable result based on the judgment of dissolution of marriage and Mario's actions in failing to protect Janis's interest in her half of the pension.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

No. 1-10-0497

---

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

JANIS B. REDA,

    Plaintiff-Appellee,

    v.

ESTATE OF MARIO R. REDA,

    Defendant-Appellant.

---

No. 1-10-0497

Appellate Court of Illinois
First District, Second Division

February 15, 2011

---

JUSTICE HARRIS delivered the opinion of the court.
Presiding Justice Cunningham and Justice Karnezis concurred
in the judgment and opinion..

---

Appeal from the Circuit Court of Cook County.

The Honorable Mark Lopez, Judge Presiding.

---

Reda & Des Jardins, Ltd., 736 N. Western Avenue, Suite 353, Lake Forest, IL 60045,
(Robert S. Reda, of counsel), for APPELLANT.

Butler Rubin Saltarelli & Boyd, LLP, 70 West Madison Street, Suite 1800, Chicago,
IL 60602-4257, (Neal L. Wolf and John S. Ganz, of counsel), for APPELLEE.

---